## THE VILLAGE OF MONTGOMERY

*v.*

## ROBERT ROBERTSON.

*Opinion filed October 23, 1907.*

1. TRIAL—*what proof does not justify refusal to direct verdict.* Proof of the mere fact that a gravel shoveler employed by a village was injured by the caving in of the gravel bank does not justify a refusal to direct a verdict for the village, if there is no evidence tending to show that the village was at fault in any way, or that it failed to perform any duty which it owed to such shoveler and thereby caused his injury.

2. MASTER AND SERVANT—*the master may presume that servant knows the common laws of nature.* One who employs a man of mature years to shovel loose gravel in a gravel pit has a right to presume that he understands the law of gravitation and the probable consequences of removing loose gravel from the bottom of the bank, and no instructions as to such matters are required.

3. SAME—*exception to the rule that master must use reasonable care to provide safe place to work.* One who employs men to load wagons in a gravel pit is not required to exercise reasonable care to keep the bank in reasonably safe condition from moment to moment, under the changed conditions brought about by the laborers themselves as they progress with their work.

4. SAME—*effect of assurance of safety by foreman.* An assurance by the village superintendent of streets to men employed by the village to take out gravel from a pit that the bank was in safe condition applies only to the condition at the time the assurance is made, and does not continue to apply indefinitely to subsequent conditions brought about by the laborers themselves as they progress with the work.

5. SAME—*when village is not liable for injury to employee.* A village is not liable for an injury to a shoveler in a gravel pit upon the ground that the wagon the shoveler was loading was placed so near the pit that he could not escape when the bank caved, where the location of the wagon was a matter wholly controlled by the shoveler himself and his fellow-servants.

6. SAME—*master not liable for negligence not contributing to injury.* Failure of the master to remedy a defect complained of by a servant does not render the master liable for an injury to the servant to which such failure did not contribute and which would not have been prevented had the master remedied the defect.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. H. B. WILLIS, Judge, presiding.

N. J. ALDRICH, THEODORE WORCESTER, F. W. HARTSBURG, and J. C. JAMES, for plaintiff in error.

W. J. TYERS, E. M. MANGAN, and MURPHY & ALSCHULER, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

While defendant in error was in the employ of plaintiff in error as a laborer, shoveling gravel in a gravel pit, his leg was broken by the falling of a gravel bank. He sued his employer for resulting damages and recovered a judgment in the circuit court of Kane county, which has been affirmed by the Appellate Court for the Second District.

The declaration is of great length, containing eight counts, but its charges may be summarized as follows: (1) That the gravel pit was a dangerous place to work, which was known to defendant and unknown to plaintiff; (2) that defendant failed to perform its duty to take reasonable care to provide plaintiff a reasonably safe place to work; (3) that plaintiff was directed by defendant's foreman to work in a dangerous place, the danger being known to defendant and unknown to plaintiff; (4) that after discovering the danger plaintiff reported it to defendant's foreman and was ordered to continue work; (5) that a wagon used for hauling gravel had a reach extending four feet to the rear, which obstructed plaintiff's retreat when the gravel fell, and that plaintiff complained to defendant's foreman of the condition of the reach, and the foreman promised to have the reach removed or cut off, which promise was not fulfilled;

(6) that plaintiff was inexperienced in such work and defendant failed to warn him of the existing danger; (7) that defendant did not properly remove earth from the top of the gravel pit; (8) that the defendant improperly placed the wagon which was being loaded by plaintiff, in an unsafe condition with relation to the gravel pit.

The evidence was to the following effect: On September 8, 1904, plaintiff, a man of mature years, was employed by defendant, and he worked on the road about three days. After that he went to work shoveling gravel in a shallow gravel pit from September 12 to September 17. Afterward he worked half a day on the road, and then went to work on Wednesday, by the direction of Tom Noteman, superintendent of streets of defendant, at the gravel pit where the accident occurred. It was an old gravel pit where gravel had been taken out long ago, and it had a face of perhaps one hundred and fifty to two hundred feet which was practically straight, except at one place where there was a curved section caused by removing gravel, which formed an indentation in the bank variously estimated at from eight to fifteen feet and estimated to extend along the bank somewhere from twenty-two to thirty-five feet. The defendant prepared to take out gravel at that place on Wednesday and first scraped off the top soil with a scraper. Plaintiff at first helped to do that work and then went down into the pit and shoveled dirt and gravel on wagons. Three teams owned by their drivers were hired for hauling the gravel, and the plaintiff and a man named DeWitt were the shovelers. The teams were driven into the pit from the south-east and were turned at the western border of the curve, so as to place the wagons parallel with the bank and face towards the entrance. Each teamster assisted in loading his own wagon, and after scraping off the top plaintiff worked all the rest of the day, Wednesday, and all day Thursday, shoveling into wagons. The superintendent, who died before the trial, was at the pit on Wednesday and twice on Thursday, the

last time about 2:30 or 3 o'clock Thursday afternoon.   On Thursday morning he told plaintiff to take the crow-bar and knock off the top of the bank at the corner.   Plaintiff did so, and Noteman then took the crow-bar and knocked off the rest of the bank, which consisted of clay at the top with a layer of fine gravel beneath and heavy coarse gravel below.   On direct examination the plaintiff testified that on Thursday he asked Noteman if he thought it was safe for a man to work in the pit, and Noteman asked what was the matter; that plaintiff said it was fine gravel and so near the teams, and especially that one with the reach, and Noteman said he would see about the reach and plaintiff should go back to work; that Noteman never said whether it was safe to work there or not, and that plaintiff went back to work and worked the balance of the day.   On cross-examination he testified that when he asked Noteman if it was a safe place to work Noteman said it was, and went up to the top of the bank and looked at it himself; that plaintiff did not believe the bank was liable to cave down; that he did not dream of any injury at all; that he asked Noteman to be certain that it was safe, and that when Noteman looked it was after the bank was broken off.   As the shoveling advanced into the bank it was necessary to break the top down, and Noteman directed them to keep the bank broken down and to keep it straight.   The witnesses estimated the height of the bank from eight or nine to twelve or fourteen feet. Noteman, the superintendent of streets, was not present after his second visit on Thursday.   On Friday morning, in loading the second wagon, which was the one with the long reach, the gravel bank fell.   The bank commenced to cave in front of the horses and the teamster climbed on the wagon and took hold of the lines.   Plaintiff testified that he was at the center of the wagon and ran for the hind wheel and made a grab for it, and the gravel struck him and carried his leg through the spokes of the wheel and broke the leg.   He said the bank was straight when the caving took place; that the

reach stuck out behind the wagon about four feet; that the dump-boards extended back of the wheel eight or nine inches and the reach three feet beyond them; that the end of the reach was two and one-half feet from the bank, and there was a space of six or eight feet from the wagon to the bank. He also testified that when the gravel started to fall he made for the end of the wagon to get around, but the reach was in the way; that the reach was about two feet above the ground and not higher than the hub of the wheel upon which he attempted to climb, and that he did not have time to get to the reach that extended back of the wagon. The owner of the wagon testified that the reach was twelve feet long and the dump-boards were of the same length, and that the reach did not extend back of the wagon more than two feet and four inches. The other shoveler, DeWitt, got on the other side of the wagon in some way, but he was not a witness and the manner in which he escaped was not explained. The evidence for the defendant was, that when the bank commenced to cave in front of the horses and continued to cave further back some one called to look out, and they got out of the way, except the plaintiff, and that he stood by the wagon, against the wheel, with his hand on the wheel, looking toward the bank, until the gravel struck him. Plaintiff testified that he did not believe the bank was liable to cave when he spoke to Noteman, the superintendent, but that the gravel was so fine and they were so near the bank that he told Noteman they ought to have more room, and asked if Noteman thought it was safe to work so near the bank.

At the close of the evidence the defendant asked the court to instruct the jury to return a verdict of not guilty, and tendered an instruction to that effect, which was refused, and the refusal is assigned for error. In considering that assignment the testimony favorable to the plaintiff is to be taken as true, and if such evidence fairly tended to prove any wrong or neglect of duty on the part of the defendant

which caused the injury the court was right in refusing to give the instruction. On the other hand, if the defendant was not at fault in any way and did not fail in the performance of any duty which it owed to the plaintiff, and thereby cause his injury, it cannot be held liable for the resulting damages merely because it employed plaintiff to work in the pit, however unfortunate the accident to plaintiff may have been.

It will at once be seen that there was no evidence tending to prove that the defendant did not properly remove the earth from the top of the gravel pit; nor that the defendant improperly placed the wagon in an unsafe condition with relation to the gravel pit, inasmuch as it neither directed nor controlled such location, which was under the control of the plaintiff and his fellow-servants, who were engaged in loading the wagon; nor that the defendant failed in the performance of any duty to warn the plaintiff of the dangers incident to undermining the bank by shoveling gravel from the bottom. Whether a laborer has ever shoveled gravel or not is wholly immaterial on the question of the duty of a master to explain dangers and warn a servant against them. It requires no experience in a person of ordinary intelligence to understand the danger of shoveling loose gravel from the bottom of a bank. The plaintiff could not plead ignorance of the law of gravitation, and if he was, in fact, ignorant of the probable consequences of removing gravel and depriving the upper soil of its support, the defendant would have no reason to presume such ignorance or that he needed instruction on that subject. Any one who hires a laborer rightfully presumes that he understands the laws of nature, which operate with uniformity, and there is no duty to warn of dangers which are patent to ordinary intelligence. (*Chicago and Alton Railway Co.* v. *Bell,* 209 Ill. 25.) Plaintiff's testimony shows that he knew something of the danger from his account of the conversation with Noteman.

There is a general rule that a master must exercise reasonable care to furnish a reasonably safe place for his servant to work, but that rule is subject to limitations and exceptions. One exception universally recognized is, that the general rule does not apply where the conditions are changing from time to time in the prosecution of the work. If the nature of the work is such as to produce changes and temporary conditions in the place where the work is performed, the rule does not require the master to keep the place reasonably safe under such changed conditions which the work renders necessary. (Thompson on Negligence, sec. 3876.) In such a case the master does not make or create the place or conditions, but they are created by the progress of the work and the workmen engaged in it. In this case the removal of the gravel created the attendant dangers, and while a master might become liable for an injury on account of some other fault or neglect, he would not be made liable under the rule here invoked. A master cannot be held to make a gravel pit safe for employees from moment to moment, when the natural support of the bank is being constantly removed and where the changing conditions must be watched and provided against by the laborers themselves.

It is urged, however, that Noteman assured plaintiff that the place was safe. Plaintiff testified that his one thought when he spoke to Noteman was that they ought to have more room between the wagon and the bank, which was a matter entirely under their own control. If the wagon was driven nearer the bank than it ought to have been at the time of the accident it was an act of a fellow-servant and not of the defendant, whose superintendent was not even present at the time. If what Noteman said was an assurance of safety at the time there was no wrong in giving the assurance, since the bank was then entirely safe and no accident occurred. Such an assurance could not continue indefinitely during the removal of the gravel. When the

superintendent was there he had the bank broken down, and any assurance he might have given did not continue during subsequent changes, when a large amount of gravel was removed from the face of the bank.

The only possible fault which the evidence tended to prove related to the length of the reach, and the evidence did not tend to prove that the reach was the cause of the accident. According to plaintiff's testimony he never could have got around the wagon if the reach had not been there. There was a space of two and one-half feet between the end of the reach and the bank at the rear of the wagon, and the reach was not higher than the hub of the wheel which the plaintiff endeavored to climb. But if the reach was high enough to constitute an obstruction, or even to delay the progress of plaintiff in escaping from the danger, it never did, in fact, delay him or obstruct him, because he did not get there, and testified that he did not have time to get to the reach.

In each of the cases upon which reliance is placed to sustain this judgment there was a different ground of liability. In the case of *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573, the foreman ordered the servant into a dangerous place against the objection of the servant, who was assured by the foreman that the bank was all right, and the servant, although fearing the danger, encountered it against his will, in obedience to the order. In this case there was no order of the foreman, who was not present and had not been after about three o'clock the previous day. In *City of LaSalle* v. *Kostka*, 190 Ill. 130, the servant was not engaged in removing a wall or bank, but was ordered to work in a ditch which was unsafe for want of support, and he had no knowledge of the danger or defect. And in *Western Stone Co.* v. *Muscial*, 196 Ill. 382, the servant was injured in consequence of an order to work in a dangerous place where the duty to look out for the bank was imposed upon others, and a machine was provided to strip the

bank and prevent its falling. In *Barnett & Record Co.* v. *Schlapka,* 208 Ill. 426, the servant was not engaged in removing the wall which fell upon him, and the distinction was there drawn between that case and cases where the safety of servants necessarily varies from time to time as the work progresses and the nature of the work renders the place dangerous. In that case a servant was required to work beside a wall in a tunnel and was assured that the wall in the tunnel was solid.

We cannot find in the record of this case any evidence fairly tending to prove the cause of action, or which, standing alone and admitted to be true, was sufficient to sustain the verdict. We conclude that the court erred in refusing to give the instruction.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*