## Lizzie M. Slagle, Administratrix, Appellee, v. Village of Averyville, Appellant.

### Gen. No. 4,923.

MASTER AND SERVANT—*limitations of rule requiring former to furnish safe place to work.* It is a general rule that a master must exercise reasonable care to furnish a reasonably safe place for his servant to work, but that rule is subject to limitations and exceptions. One exception universally recognized is that the general rule does not apply where the conditions are changing from time to time in the prosecution of the work.

Action on the case. Appeal from the Circuit Court of Peoria County; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed March 11, 1908.

JOS. A. WEIL, A. JACOBSON and IRWIN L. FULLER, for appellee.

JOS. WILHELM and QUINN, QUINN & OTMAN, for appellant.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by appellee, Lizzie L. Slagle, administratrix of the estate of Philip R. Slagle, deceased, in the Circuit Court of Peoria county, against appellant, the Village of Averyville, to recover damages resulting from the death of said Slagle while shoveling gravel in a pit owned and operated by appellant. Appellee filed a declaration containing two counts which in substance averred that, on September 4, 1906, and theretofore, appellant owned, operated and controlled a certain gravel bank or pit, and that it had negligently permitted the gravel in said pit to be so excavated as to cause a large amount of heavy gravel to be left overhanging the topmost edges thereof and caused gravel to be negligently excavated without properly supporting the overhanging gravel upon the top edges of said bank, and that deceased, while working on said day in said gravel pit under the direction of appellant's servant, and with due care for his own safety, without knowledge of, and without reasonable opportunity to judge of the dangerous condition of said gravel pit, and without reasonable opportunity to escape, was killed by the caving in or falling down of said overhanging ledge of said bank. A demurrer to the declaration was interposed and overruled. A plea of not guilty was filed. There was a trial and a verdict for appellee for $4,000. A motion for a new trial was denied, judgment was entered on the verdict, and this appeal was taken.

The evidence shows that the gravel pit where the accident happened was one which had not been worked since the middle of the preceding June, at which time deceased, a man of ordinary intelligence, mature years and good eyesight, had been employed in it for a day and a half. The bank, at the point of the accident, was about 9 feet high. The pit was semicircular in form and about 16 feet long. Its different strata of earth were, at the top, a coat of dark sand, gravel and black soil, 3 or 4 inches in thickness; next, a red clay mixed with gravel and sand 18 to 20 inches in thickness.

Below that was a finer light sand, and below that, at the bottom of the pit, was coarse gravel. At 8 o'clock A. M., September 4, 1906, the day of the accident, the men were taken to the bank by one John Melzer, appellant's superintendent of streets, and told to go to work, but to be careful not to dig under the bank. He remained for a time, and then went away and did not return until after the accident. The men were provided with shovels, a pick and an iron bar, and placed themselves and worked as suited their convenience. They used the pick or iron bar to loosen or pick the top coat of heavy soil and carry down the sides of the bank together with the gravel and other material into the bottom of the pit, from which place it was shoveled into wagons. The finer sand, immediately under the top coat of heavy soil and gravel, was loose and required but little effort to bring it down, leaving the top overhanging ledgelike until it was picked or pried off by some of the men. When the men commenced work on that morning there was an overhanging ledge of the top stratum from 6 inches to a foot wide. Twelve wagon loads of the contents of the pit had been shoveled into wagons and drawn away before the accident. At about 11 o'clock, while deceased with two other shovelers and a teamster were loading another wagon, the overhanging ledge gave way, and with the top of the bank settled, and fell in upon deceased, killing him.

At the close of plaintiff's evidence in chief, and again at the close of all the evidence, appellant asked the court to instruct the jury to return a verdict of not guilty and tendered instructions to that effect, which were refused, and the refusal is assigned for error. In consideration of that assignment, the testimony favorable to appellee is to be taken as true and if such evidence fairly tended to prove any wrong or neglect of duty on the part of appellant, the court was right in refusing to give the instructions. On the other hand, if the appellant was not at fault in any way and did not fail in the performance of any duty which it owed deceased, it cannot be held liable for the resulting damages merely because it employed deceased to work in the pit,

however unfortunate the accident to deceased may have been or however great the loss or damage to his next of kin.

It will be seen that there is no evidence tending to prove appellant did not properly support the overhanging edges of the pit. It neither directed nor controlled the way in which the gravel was excavated, which was under the control of deceased and his fellow-servants who were shoveling the gravel from the pit into the wagon, and it did not fail in the performance of any duty to warn the plaintiff of the dangers incident to undermining the bank by shoveling gravel from underneath the overhanging ledge.

In the case of the Village of Montgomery v. Robertson, 229 Ill., 466, which was a case where the plaintiff was injured while shoveling loose gravel from the bottom of a pit into a wagon, by the gravel caving in and catching him between the reach of the wagon and the bank, the court said: "Whether a laborer has ever shoveled gravel or not is wholly immaterial on the question of the duty of the master to explain dangers and warn a servant against them. It requires no experience in a person of ordinary intelligence to understand the danger of shoveling loose gravel from the bottom of a bank. The plaintiff could not plead ignorance of the law of gravitation, and if he was, in fact, ignorant of the probable consequences of removing gravel and depriving the upper soil of its support, the defendant would have no reason to presume such ignorance or that he needed instruction on that subject. Any one who hires a laborer rightfully presumes that he understands the laws of nature, which operate with uniformity, and there is no duty to warn of dangers which are patent to ordinary intelligence. (C. & A. Ry. Co. v. Bell, 209 Ill., 25.)" It is a general rule that a master must exercise reasonable care to furnish a reasonably safe place for his servant to work, but that rule is subject to limitations and exceptions. One exception universally recognized is that the general rule does not apply where the conditions are changing from time to time in the prosecution of the work. If the nature of the work is such as to produce changes and temporary conditions in the place

where the work is performed, the rule does not require the master to keep the place reasonably safe under such changed conditions which the work renders necessary. Thompson on Negligence, 3876. Village of Montgomery v. Robertson, *supra.* In such case the master does not make or create the place or conditions, but they are created by the progress of the work and the workmen engaged in it. In this case, the evidence shows the removal of the gravel from underneath the overhanging ledge created the attendant dangers, and while appellant might become liable for an injury on account of some other fault or neglect, it would not be made liable under the rule here invoked. A master cannot be held to make a gravel pit safe for employees from moment to moment, when the natural support of the bank is being constantly removed, and where the changing conditions must be watched and provided against by the laborers themselves. Village of Montgomery v. Robertson, *supra.*

Counsel for appellee, in support of the ruling of the trial court in refusing to direct a verdict, cite and rely on Cobb Chocolate Company v. Knudson, 207 Ill., 468, and C. & E. I. R. R. Co. v. Knapp, 176 Ill., 128. In the Cobb Chocolate Company case, the plaintiff's hand was injured in a machine composed of rollers. He was wiping the machine with waste under the immediate direction of a foreman, and while so engaged the waste caught and drew his hand into the rollers. The question was whether plaintiff acted recklessly or as a reasonably prudent person would have acted, under the circumstances, and the court held that that was a question of fact to be decided by the jury. In this case there was no machinery to avoid, nor any order of the foreman. He was not present, and had not been since he put the men to work in the morning. In the C. & E. I. R. R. Co. case, plaintiff was a freight conductor whose duty it was to inspect the train before starting. While making the inspection, he noticed a coupling pin not exactly in place. The cause of this condition he could not tell without examination. He stepped between the cars for this purpose and took hold of the pin. At that moment the train moved back and the draw

bar pushed back under the car so as to cause the pin head to strike the dead wood at the end of the car and crush plaintiff's hand. The negligence charged there was, that the draw bar was not reasonably safe and properly equipped. There it was insisted that the danger being known and obvious, and the plaintiff having voluntarily occurred it, could not recover. The court said that notwithstanding the obvious conditions referred to, had the car been equipped with other usual appliances, plaintiff's act would not necessarily have been dangerous, and held that the trial court did not err in refusing to direct a verdict. In neither of these cases was the servant engaged in service where he could control surroundings. In this case, deceased could have taken down the overhanging ledge and kept from under it.

We cannot find in the record in this case any evidence fairly tending to prove the cause of action, or which standing alone and admitted to be true, was sufficient to sustain the verdict. We are of the opinion that the court erred in refusing to give the instructions directing a verdict.

The judgment is reversed.

*Reversed, with finding of facts.*

Finding of facts, to be incorporated in the judgment of the court: The death of Slagle was caused by the caving in of the gravel pit or bank in which he was working. The danger or risk of working there was assumed by him, and appellant is not liable therefor.