## Noel Orlea, Appellee, v. Bunsen Coal Co., Appellant.

1. MINES—*safe place to work.* The rule requiring the master to use reasonable diligence to furnish a reasonably safe place for his employees to work does not apply to those employees whose duties are to make dangerous places safe, and this is true in the case of mines notwithstanding the mining act.

2. MASTER AND SERVANT—*risk assumed in making dangerous place safe.* An experienced timber man was using his own method in making safe a dangerous place in a mine, and it becoming necessary for him to run he caught his foot in a hole between ties in the roadway that was full of slush and mud. *Held,* that he had equal means of knowledge with the owner to observe the conditions, and that he assumed the risk of the hole as a matter of law.

Action in case for personal injuries. Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the October term, 1911. Reversed. Opinion filed March 15, 1912.

WILLIAM BEYE and REARICK & MEEKS, for appellant; KNAPP & CAMPBELL, of counsel.

R. ALLEN STEVENS and CLARK & HUTTON, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case for the recovery of damages for a personal injury averred to have been sustained because of the negligence of the defendant while he was in its employment. There was a verdict and judgment for $800 in favor of the plaintiff. The defendant prosecutes this appeal.

The declaration consists of two counts alleging common law negligence. The first count avers that the plaintiff was working for the defendant as a coal miner and that the defendant negligently failed to use reasonable care to keep a certain roadway in a reasonably safe condition, in that it negligently permitted

a certain hole to be and remain between the ties at a point near where the plaintiff was ordered to work; that said hole extended across the roadway between the rails of the track and was filled with water and soft mud, and that this was a dangerous condition, which had existed for a long time, of which the defendant had knowledge and that the plaintiff had no knowledge of the existence of the hole and no opportunity to discover the same. The only difference in the second count is that it avers that such condition had existed for such a length of time that the defendant by the exercise of ordinary care would have known of it.

The evidence shows that the mine had been shut down for several months prior to the accident; that the defendant had purchased the mine and was cleaning up the entries and getting it in shape to begin mining; that at that time no person was in the mine except persons employed for the purpose of making the mine safe and improving its condition; that the entries were in bad repair and unsafe; that there was rubbish upon the tracks and the timbers, caps and braces supporting the roof had become insufficient and unsafe to support it; that the work of getting the mine in shape for work was progressing in certain entries towards the west and that it was necessary that the timber men should make the roof safe by pulling down the loose rock and timbers, and supporting the roof with new timbers where necessary, before the men working upon the roadway were permitted to work under the roof. Tony Witsch, plaintiff's helper, testified on behalf of plaintiff that "we and the timber gang were going ahead of this rock gang taking down the roof and making it safe wherever it was necessary, so that the men on the roadway would not have to work under a place that was unsafe."

Freeman Orlea, a nephew of plaintiff, who was

working in the main west entry at the time of the accident testified that he knew that the timbers there were old and rotted and the roof in a very dangerous condition, that he knew that was its condition the night before, and that there were men taking down this loose rock and timbers so as to make the roof safe.

The plaintiff was a coal miner of thirty years experience; he was engaged by the defendant as an experienced timber man and had had much experience in that line. He testified that he had been working in the sixth west entry and that he was directed by his foreman to go with his partner to the fifth west entry where there was a "new fall," "pull the fall down and make it safe," so that the work of clearing up that entry might proceed. He with his helper and the foreman went through a cross cut and on arriving in the fifth west entry they proceeded west to a point just east of room twenty-two. Plaintiff was asked what the foreman said about the manner of doing the work and replied he was sitting just back of us; "he didn't say anything, just let us do it on our own judgment."

Plaintiff and his helper took down a fall, and at the time of the accident were engaged in removing the old timbering and loose rock just east of room twenty-two. At this point there were four timbers two or three feet apart across the top of the entry supported on the north side by a "hitch" in the side wall. The south end of each timber was supported by a prop. The entry had been made safe east of this place. Nothing had been done on the roadway under these timbers because of the dangerous condition of the roof. There was mud and slush in the roadway to such an extent that some of the ties were covered with mud and water. Plaintiff standing under the second timber from the west assisted by his helper who stood behind him proceeded to knock down the post under the west

timber, using a prop for that purpose. When they rammed the post under the south end of the west timber, it fell to the east knocking down the next timber east, and it fell against the next one, and that against the last one, so that all four timbers fell. The plaintiff ran east and claims to have got his foot caught between the ties, which were four feet long and four or five inches square. He fell under where the third timber had been, and was struck by a falling rock that broke his leg which is now crooked and weak.

The rule requiring the master to use reasonable diligence to furnish a reasonably safe place for his employees to work does not apply to those employees whose duties are to make dangerous places safe, and this is true in the case of mines notwithstanding the statute. Kellyville Coal Co. v. Bruzas, 223 Ill. 595; Tygett v. Sunnyside Coal Co., 121 Ill. App. 77; Village of Montgomery v. Robertson, 229 Ill. 466; Ashcraft v. Roberts, 151 Ill. App. 88; Morgan v. Wabash Ry. Co., 158 Ill. 344.

The plaintiff although working in a mine was not employed as a miner proper working at mining, but was employed to make safe the dangerous places in the mine, the conditions of which were obvious and apparent to the observation of any person of ordinary intelligence. The evidence shows that he had full opportunity and equal means of knowledge with defendant to observe the conditions and that he did see the conditions and is chargeable with full notice thereof. It was by reason of his employment to make safe these dangerous places that he was injured. He was given no special directions by his foreman as to how to do the work, but only told to make it safe; the method was left to his own judgment. In undertaking this work he assumed the hazard of the employment.

No judgment in favor of the plaintiff can be sustained when the testimony given by him is considered. The judgment is reversed.

*Reversed.*

Finding of Fact: The plaintiff assumed the risk of the danger by which he was injured.