## CARLISLE v. CITY OF WACO.
### No. 1309.

Court of Civil Appeals of Texas. Waco.
Dec. 29, 1932.

F. R. Valenetine and J. A. Kibler, both of Waco, for appellant.

John McGlasson, of Waco, and George Morrow, of Dallas, for appellee.

GALLAGHER, C. J.

This suit was instituted by appellant, Mrs. Lena Carlisle, against appellee, the city of Waco, to recover damages for injuries resulting from a fall on a sidewalk in said city. The case was tried to a jury, a verdict instructed for appellee, and judgment in its favor that appellant take nothing.

#### Opinion.

Appellant challenges the action of the court in instructing a verdict against her by a group of assignments. She contends thereunder that the testimony raised an issue of negligence on the part of appellee with reference to the material and workmanship used in constructing said sidewalk and in permitting it to become and remain in a cracked, broken, weakened, defective, and dangerous condition. Said sidewalk lay between the west line of South Eighth street and an open space at and along the Missouri-Kansas & Texas passenger and freight depots. Said space was used both as a thoroughfare and for parking purposes. There was a driveway from Eighth street and on a level therewith to said open space. The street curb turned at the north line of said driveway and ran therewith westward to the property line. Pedestrians in passing south over said sidewalk stepped from said curb down to the surface of the driveway, a distance of six or eight inches. Appellant and her daughter, Miss Ella Carlisle, on the afternoon of the accident, were traveling southward over said sidewalk from the business part of the city to their home. Miss Ella was on the street side and appellant on the inside of the sidewalk at the time of the accident. Miss Ella testified, in substance, that her mother, in stepping from the cross curb into said driveway, put her right foot on said curb and lifted her left foot, and that at that instant the cement gave way under the right foot, and she fell prone on the surface of the driveway and was seriously injured. The witness described the piece of cement that broke or gave way as about one inch thick and wide enough to fit under the ball of the foot. She further testified that before her mother stepped on the place where the curb gave way "it looked all right"; that there were cracks in the sidewalk all around there, and that a crack ran up to the piece that gave way, but that nobody would see or notice such crack; that the sidewalk around there was pretty badly cracked up but not bad enough to indicate it would break if she stepped on it; that she had passed over the same twice a day for two years and noticed the cracks every time she did so. She also testified that she examined the place where the curb gave way under her mother's foot, and that it was a fresh break. Appellant testified that she had not theretofore in passing over said sidewalk noticed any cracks or breaks therein. She also testified that at the time of the accident she stepped on the edge of the curb, that it broke or gave way, and that it had not been broken at that place before. The sidewalk was about ten feet wide. Both sidewalk and curb were constructed of concrete with a finishing layer of cement. The testimony does not disclose when or by whom the same were constructed, but does show that they were built several years before the accident.

Appellant introduced in evidence three kodak pictures of the scene. They were taken the next morning after the accident. Said pictures show a small break or nick in the outer edge of the curb about as described by appellant and her daughter. Said point was apparently about two feet west of the middle of the sidewalk. The walk was divided into squares, the lines of which a witness called expansion joints. There was also such a line or joint between the sidewalk and the curb and the same extended westward beyond the

break where appellant fell. There was a crack running from said joint between the curb and sidewalk and curving slightly toward the north and extending to the west line of the walk. There were other cracks joining the same, but all such other cracks were located two feet or more from the break where appellant fell. There is some difficulty in determining whether said main crack continued along the expansion joint to a point opposite said break or not. We do not think such determination necessary. The pictures clearly show an unbroken line of surface cement about an inch and one-half wide between the break or nick in the outer edge of the curb and said inside line, whether such line be both crack and expansion joint or not.

Several cement and concrete contractors of extensive experience in such work examined the sidewalk and curb at the scene of the accident. Such examination was made at the time of the trial, which was about eight months thereafter. There was, however, no contention that the situation had been materially changed. All said witnesses testified that the material and workmanship employed in constructing said sidewalk and curb were of high grade. They further testified that the breaks or cracks in concrete work did not indicate either bad material or workmanship; that the character of concrete was revealed by cracks; that, if such cracks or breaks were straight, breaking the gravel as well as the mass, it was good concrete; that, if the mass crumbled and separated from the gravel, it was bad concrete. They further testified that they examined the little nick in the edge of the curb where appellant fell, and that it was a straight break severing the gravel as well as the mass, and that the concrete at that place was of high grade. One witness testified that the crack heretofore referred to running to the expansion joint between the curb and the walk did not reach the break in the curb where appellant fell. All of them attributed that break to the impact of an iron-wheeled vehicle upon it in passing through said driveway. They further testified that they tested said curb at that place and found it firm and strong.

Considering the testimony as a whole, it is shown affirmatively that there was no connection between the cracks in the sidewalk which existed at the time of the accident and had existed long prior thereto and the little nick in the outer angle of the curb where appellant fell. Appellant's contention that the testimony raised the issue of negligence on the part of appellee proximately causing her fall and injuries by permitting said sidewalk to become and remain in the cracked condition testified to by the witnesses cannot be sustained.

The only other contention presented by appellant is that the testimony raised an issue of negligence on the part of appellee proximately causing her fall and injuries, in that the material and workmanship used and employed in the construction of said sidewalk and curb were defective and that appellee was legally charged with notice of such defects. Whether said sidewalk and curb were constructed by the city or by the railway company was not shown. The testimony did show, however, that they were both constructed years before the accident and must necessarily have been subjected to the strain of sustaining the weight of many pedestrians traveling over the same during all such years. Appellee showed by disinterested witnesses that both material and workmanship used therein were of high grade, not only as to the work as a whole, but with respect to the very place in the curb from which the chip which gave way under appellant's foot was broken. This was further shown by the fact that after eight months' additional service the curb all around said break was still intact and stood appropriate tests applied by said witnesses.

The testimony introduced by appellant does not in our opinion raise an issue of defective material and workmanship in the construction of said curb of such a nature as to cause appellant's fall and to render appellee liable for the injuries sustained thereby. Appellant testified the curb gave way under the weight of her body resting on her right foot and that she did not see any defect or break therein at the time she stepped on it. Her daughter merely testified that the curb gave way under her mother's weight; "that it looked all right" to her when her mother stepped on it. According to the testimony heretofore recited, the curb was not defective, and the breaking off of said chip was attributed to contact with some iron-wheeled vehicle passing over said driveway. Such an accident might have loosened said chip from the curb and still have left it in place to give way under appellant's foot. The mere fact that neither appellant nor her daughter observed the same is not necessarily inconsistent with the existence of said condition. There being no testimony as to when said injury to the curb was inflicted, appellee could not be charged with notice thereof by lapse of time. Streets are built and maintained for the use of the traveling public and are in constant use by them and may immediately become defective and dangerous from such constant use, though they were properly constructed and were theretofore in every respect suitable for travel. 13 R. C. L., p. 443; Klein v. City of Dallas, 71 Tex. 280, 285, 8 S. W. 90; Hanks v. City of Port Arthur (Tex. Sup.) 48 S.W.(2d) 944, 948, par. 8; City of Waco v. Ballard (Tex. Civ. App.) 277 S. W. 441, par. 2.

However, if we accept appellant's theory that the curb was intact at the time she stepped on it and that said chip was not then

loosened therefrom, and that it did actually break under her weight and that such facts raise a permissible inference of defective material or workmanship, we think the testimony showed conclusively that such defect was a latent one and that there is no testimony sufficient to raise an issue of negligence on the part of appellee in not discovering the same. 43 C. J. p. 1051, § 1826; 13 R. C. L. p. 342, § 281.

The rule announced by our Supreme Court in Joske v. Irvine, 91 Tex. 574, 582, 583, 44 S. W. 1059, 1063, is peculiarly applicable in this case. We quote from the opinion of the court in that case as follows:

"From a careful examination of the cases, it appears, (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force.

"If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more."

See, also, Garrett v. Hunt (Tex. Com. App.) 283 S. W. 489, 490 (top second column) et seq.; Waco Drug Co. v. Hensley (Tex. Com. App.) 34 S.W.(2d) 832, 835, par. 1.

The action of the trial court in instructing a verdict, when tested by the rule so announced, was proper, and its judgment is affirmed.