**DANIEL et ux. v. CITY OF WACO.**

**No. 2110.**

Court of Civil Appeals of Texas. Waco.

Sept. 21, 1939.

Rehearing Denied Oct. 19, 1939.

John M. McGlasson, of Waco, for appellants.

Allan D. Sanford, City Atty., and George Morrow, N. B. Brown, and Mabel Grey Howell, Asst. City Attys., all of Waco, for appellee.

GEORGE, Justice.

This is a personal injury suit. It was instituted by E. B. Daniel and wife, Caroline Daniel, against the city of Waco. The case was tried before the court and a jury and judgment was rendered on the latter's findings that E. B. Daniel and Caroline Daniel take nothing. Hence this appeal by them.

Appellants say that the trial court erred in not setting aside the judgment and verdict herein and granting a new trial for the reason that the jury in its deliberations was guilty of misconduct (a) in that it received from one of its members unsworn information to the effect that he had been by the place where Mrs. Daniel fell several times and had seen nothing wrong with it and that the sidewalk at that place was in good condition; and (b) in that it

also received from one or more of its members information to the effect that there were many places in Waco as bad, if not worse, than the one where Mrs. Daniel received her injuries; that the jury in arriving at its verdict discussed and considered such matters and the purported fact that it would break the city to fix all of such places.

The material testimony relevant to the merits of the case was to the effect that it had been raining for sometime prior to January 11, 1937, and that the water on the ground had been frozen since the Saturday morning before; that some thawing out had taken place on Sunday but that it continued to rain, freeze and sleet; that Mrs. Daniel, while on her way to work on that day, stepped upon the sidewalk at the intersection of 9th and Jefferson Streets and took one or two steps and turned to go back toward Jefferson Street; that she stepped with her right foot on the ice between the concrete sidewalk and four meter boxes, and that the ice gave way under her and that she went down on her ankle; that her right foot went down in a hole; that her left foot slipped over one of the water meter boxes; that the distance between the 4 foot concrete sidewalk and the meter box was 5½ inches; that there was a sloping depression between the concrete sidewalk and water meter box; that Bermuda grass and Bermuda grass roots were in the depression, showing that the depression was in a place where Bermuda grass grew. There was no evidence offered tending to show that the officials of the city, charged with the duty of inspecting and repairing the streets and sidewalks, had any actual knowledge of the depression. There was not any evidence as to how long the depression had existed or what had caused same. The sidewalk was frequently and regularly used by the public. There was not any testimony that anyone using the sidewalk had ever noticed the depression prior to January 11, 1937. The testimony as to the depth of the depression was conflicting. Mr. E. B. Daniel testified that he went to the place of the accident about three weeks after the accident and that he then found the deepest part of the depression to be 6 inches. Mr. N. B. Brown, city tax collector, inspected the place sometime thereafter and testified that he found the deepest part of the depression to be from 1½ to 2 inches below the elevation of the concrete sidewalk and

water meter boxes. Another witness testified that he found the deepest point to be around 2½ inches.

The jury found (1) that Mrs. E. B. Daniel, on January 11, 1937, fell at the water meter box in question; (2) that there was a depression between the water meter box and the cement portion of the sidewalk; (3) that such depression did not render the sidewalk in a condition that was not reasonably safe for use by the public as a sidewalk; (4) that the injuries and damages claimed by the plaintiff were the result of an unavoidable accident; (5) that the depression was slight and trivial; (6) that the depression was not so obvious as to attract the attention of persons in the habit of passing along the sidewalk at the place in question; and (7) that the accumulation of snow, ice and sleet at the time and place in question constituted an intervening agency.

The following is a brief resume of the pertinent testimony adduced at the hearing on motion for new trial:

Herman McLean, juror, testified that Mr. Johnston was the foreman of the jury; that Mr. Johnston, after they had retired to consider their verdict and before any of the issues had been answered, made inquiry of the jurors if any of them had been by the place where Mrs. Daniel fell; that he heard one juror make the remark that he had been by there, but that he did not know what such juror said as to when and what he had noticed in driving by there; that there was just a very little discussion with reference to other places in the city of Waco being as bad, if not worse; that there was not any discussion as to whether the city was liable prior to the answering of the questions; that there was somewhat of a discussion as to whether or not it was necessary to put any amount down in answer to questions 7 and 11, and whether the jury would be contradicting itself if it didn't; that there was a general discussion as to whether it would make the city liable if they put any amount in there; that some of the jurors suggested that they put down an amount because it would not make any difference, and some suggested that they leave it off; that they started off with issue No. 1 and answered them all down to issue No. 7 before there was any discussion; that he answered the first six issues according to his idea of the evidence that was produced on the trial of the case; that he had passed

by that place himself; that the discussion about other places in the town being as bad and that it would break the city to fix all of them naturally had some effect on his mind.

It appears from a close examination of the record that Herman McLean was testifying to the argument of counsel when he said "that it would break the city to fix all of them naturally had some effect on his mind" instead of any discussion of the jury. No objection was made and preserved to the argument. He does not testify that the jury discussed the proposition that it might break the city if it were required to remedy all such defects in the city of Waco.

Joe Foit testified that it was just mentioned whether or not the city was liable before any of the questions were answered; that somebody said that he didn't know whether the city would be liable for that; that there was no discussion as to whether the city was liable or not liable; that Mr. Vochoska said he went by there every day three to five years ago, when he was living in the city of Waco, and that at that time the sidewalk was in good condition; that such statement did not have any effect on him; that while they were talking together one of the jurors said there were many depressions in the streets and sidewalks in the city of Waco; that only one of the jurors thought they better not put any amount in answer to interrogatories 7 and 11 because if they did they might make the city liable, but that he did not think so; that the reason they asked the judge about their answers to questions 7 and 11 was because they just didn't know whether they should put an amount there, and that was all there was to it; that the attorneys for the city had told the jury in their argument that if the city were forced to fix all of the depressions of that kind in the streets and sidewalks, it would break the city; that he did not take into consideration, in arriving at his verdict, what Mr. Vochoska had said about the condition of the sidewalk several years before.

Joe Lucian testified that one juror said that he had been by there several times and had not seen anything; that the juror did not say when he had been by there; that there was quite a bit of discussion to the effect that there were a number of places in Waco as bad if not worse; that he answered each issue as he believed the evidence to be; that he told Eugene Mc-

Glasson that he could not say whether or not Mr. Vochoska's statement had any effect on his mind.

There must be a probability of injury as a practical matter shown before an appellate court should reverse a case for alleged misconduct of the jury. The matter must be measured and appraised in the light of the entire record and the theory on which the case was tried and submitted to the jury. Traders & General Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585.

The case was not tried and submitted to the jury on the theory that the officials of the city, charged with the duty of inspecting and repairing its streets and sidewalks, had actual knowledge of the depression or that the depression had been created by the city itself or through its procurement, but on the theory that the evidence was sufficient to charge such officials of the city with constructive notice of the depression, that such depression rendered the sidewalk not reasonably safe for use by the public as a sidewalk, that it was negligence on the part of the city to permit the sidewalk to be in a condition not reasonably safe, and that such negligence was a proximate cause of the injuries sustained by Mrs. E. B. Daniel. A city is not an insurer against all defects in its streets, sidewalks and parkways, but is answerable for negligence in the performance of its duties in the construction and care of them. For a defect arising in them without its negligence, it is not liable, unless it has notice, actual or constructive. City of Galveston v. Dazet, Tex. Sup., 19 S.W. 142; Carlisle v. City of Waco, Tex.Civ.App., 56 S.W.2d 208. Are there any facts in the record from which it appears that the depression ought to have been known and remedied by the city prior to Mrs. Daniel's fall? The depression was in the parkway and not in the concrete sidewalk, and photographs introduced in evidence show that it was in a place where Bermuda grass grew. The record does not inform us what caused the depression or when it occurred or whether anyone, city official or user of the sidewalk, had ever discovered it prior to January 11, 1937. It is clear that it was not so notorious or obvious as to be evident to the passers and users, for no witness was produced who could testify that he had ever seen it prior to the date in question, and further there is no circumstance given

that even tends to show that it was likely to attract attention. So far as the record discloses, the depression could have occurred in the Bermuda grass at any time from any one of a number of causes and at all times have been concealed by the grass. Therefore, we have reached the conclusion, after consideration of the entire record, that the depression was not of such character as likely to be observed by those charged with the duty of keeping the streets in repair while in the exercise of ordinary care. The burden rested on the Daniels to produce sufficient evidence to raise an issue of fact as to whether the city by the exercise of ordinary care ought to have discovered and remedied the defect prior to January 11, 1937, and since they failed so to do, the question of jury misconduct becomes immaterial.

We have carefully examined all other assignments of error presented, and, having found no error therein, affirm the judgment of the trial court.