Southwestern Telegraph & Telephone Company v. N. B. Tucker.

No. 1904.    Decided December 23, 1908.

1.—Master and Servant—Telephone Pole—Duty of Inspection.    。

The servant of a telephone company was injured by the fall of a pole which he had climbed in order to cut the wires as directed. The fall was caused by decay of the pole beneath the ground, there being nothing in its appearance to indicate the defect. It had been erected six years, and such poles usually lasted ten to fifteen years. Held, that nothing was disclosed which made it the duty of the company to inspect for the discovery of such defect, and in the absence of other proof of negligence a recovery by plaintiff was unwarranted. (Pp. 225–227.)

2.—Same.

Question suggested whether under the circumstances here presented the duty of inspection of a telephone pole to ascertain its safety did not devolve upon the servant whose duty called upon him to climb upon it.    (P. 227.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Brazos County.

Tucker sued the telephone company and had judgment against it. Defendant appealed and on affirmance obtained writ of error.

*A. P. Wozencraft, W. S. Bramlett, D. A. Frank* and *Geo. D. Neal,* for plaintiff in error.—All the evidence showed that the said accident was due to a latent defect which could not be discovered by the defendant by the use of reasonable diligence or any system of inspection employed by well equipped and properly conducted telephone companies under the same or similar circumstances. Texas & P. Ry. Co. v. Buckalew, 34 S. W., 166; Fordyce v. Yarborough, 1 Texas Civ. App., 260; Essex County Elec. Co. v. Kelly, 29 Atl., 427; Quintana v. Consolidated K. C. S. & R. Co., 14 Texas Civ. App., 347.

There was error in the charge of the trial court wherein the jury were told that when in the exercise of ordinary care to have or maintain the defendant's poles in a safe condition an inspection is necessary to maintain them, such inspection is the duty of the master and not of its servants, because same eliminates from the consideration of the jury the evidence that one of the duties of the plaintiff was to inspect the pole upon which he was at work. Sias v. Lighting Co., 50 Atl., 555; McIsaac v. Northampton, 51 N. E., 525; Dupree v. Alexander, 29 Texas Civ. App., 31; Galveston, H. & S. A. Ry. Co. v. Butchek, 66 S. W., 337; Texas & P. Ry. Co. v. Buckalew, 34 S. W., 166.

*V. B. Hudson,* for defendant in error.—It is a duty imposed by law upon the master to use ordinary care to furnish a servant with a reasonably safe appliance and a reasonably safe place to work. The servant has the right to assume that the master will perform his

legal duty, and use ordinary care to furnish reasonably safe instrumentalities. A master can not, by a contract, rule or custom, place the burden of inspection on the servant, unless the servant is employed primarily as inspector. Dupree v. Alexander, 29 Texas Civ. App., 31; International & G. N. R. R. v. Elkins, 54 S. W., 931; San Antonio Edison Co. v. Dixon, 17 Texas Civ. App., 320; Essex County Elec. Co. v. Kelley, 37 Atl., 619; Biker v. New York R. Co., 72 N. Y. Supp., 169; Tracey v. Western U. Tel. Co., 110 Fed., 103; Kelley v. Erie Tel. Co., 25 N. W., 706; Southern Bell Tel. Co. v. Clement, 34 S. E., 951; San Antonio & A. P. Ry. v. Lindsey, 27 Texas Civ. App., 316; Missouri, K. & T. Ry. of Texas v. Crowder, 55 S. W., 381; Southwestern Tel. & Tel Co. v. Tucker, 98 S. W., 909; Lee v. I. & G. N. Ry. Co., 87 Texas, 589; Wallace v. Southern Cotton Oil Co., 91 Texas, 21-22.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

The Court of Civil Appeals accurately and succinctly states the facts in this case as follows:

"This suit was instituted in the District Court of Brazos County some time during the year 1905, by the appellee, N. B. Tucker, to recover of the appellant damages in the sum of $1,999.50 for personal injuries sustained while in the service of the appellant. The facts show substantially that the appellant owns and operates a line of telephone wires in and through the town of Bryan; that at the time the injuries occurred it was necessary to cut the wires that passed over a certain street in the town of Bryan, in order to permit the passage of a church which was being moved. Clopton, who was the division inspector of the appellant, and who had charge of that particular portion of the appellant's line, was sent to Bryan for the purpose of having the work done. Upon arriving there he concluded that he needed the services of some other linemen to assist him in doing the work that was required to permit the passage of the church. He accordingly employed the appellee, Tucker, for that day only, to assist him in cutting the wires over the street along which the church was to pass. The appellee was instructed by Clopton to ascend a telephone pole on the north side of the street, and at the same time a man by the name of Eaves was directed to ascend another telephone pole on the opposite side. The instructions given to the two men were to cut the wires between the two poles so that there would be no obstruction to the steeple of the building in passing. The two linemen were to cut the wires at each end at the same time, in order to prevent some confusion resulting to the line. There were something like eighteen or twenty wires to be clipped in this manner. When all had been cut except one the pole upon which Tucker was working began to fall and fell slowly for some distance, when it increased its motion and fell rapidly to the ground, resulting in the injuries complained of in the appellee's original petition, and for which he recovered a judgment. The pole broke off just about the top of the ground; some of the witnesses testify about an inch below the surface; all testify that it was rotten and that only a small por-

tion of the outer surface was sound, the dimensions of this rim of sound wood varying according to the estimate of the witnesses, some stating that it was 1-16 of an inch in thickness, while others make it a little thicker, but all agree that beneath the ground the pole was entirely rotten and that the fall was occasioned solely by reason of the fact that it was rotten. The evidence tended to show the pole had been in place something like six years, was of white cedar, and that the life of such poles varies from ten to fifteen years, twelve years being the general average. There is nothing in the record to indicate whether this pole was new when placed in its present position, or what its condition was. The evidence supports the conclusion that there had been no inspection further than a superficial observation of the pole after its erection, the appellee stating that when he was directed to ascend the pole he kicked it with his spur, as he generally did, for the purpose of ascertaining whether or not it was sound, and that to all appearances it seemed to be so; that he believed it was sound at the time he climbed it, and that it was sufficient to sustain his weight and the additional strain that would be put upon it by clipping the wires between that and the one on the opposite side of the street. No issue is made as to whether or not the pole was not otherwise properly sustained by guys, and that other precautions were taken to prevent an undue strain being imposed by releasing it from the support of the wires on the opposite side of the street—in fact, the rotten condition of the pole was shown to be the sole cause of its giving way at the time it did. The case was tried in the District Court before a jury, resulting in a verdict in favor of the plaintiff in the sum of $1500 on the ——— day of September, 1905. From that judgment an appeal was taken which was heard in the Court of Civil Appeals of the Fourth Supreme Judicial District, and the case was reversed and remanded. The case was again tried, resulting in a verdict in favor of the appellee for the sum of $1625, and from that judgment this appeal is prose-cuted."

This writ of error was granted upon the ground that it was thought that there was no evidence of negligence on the part of the plaintiff in error. We are still of the same opinion. There can be no question but that the defendant in error was injured by the falling of the pole. If there was any negligence on the part of the plaintiff in error in not having inspected the pole sufficiently to have discovered the defects, or if there had been anything to indicate that the pole was rotten under the ground it would clearly have been the duty of the company, through its inspector, to have examined the pole, which would have resulted in the discovery of the defect. The evidence discloses, so far as was known, that there was no reason to suppose that the pole was rotten, for according to the testimony the pole had been standing only for six years. The rottenness of the pole having been concealed by the ground we fail to see that there was anything in the testimony tending to show that the plaintiff in error ought to have discovered it. We know of no rule of law that imposes upon the master the duty of looking out for defects in objects with which the servants are working, where there is nothing to indi-

cate that any such defect existed. To so hold would be to make the master the insurer of the safety of the servants absolutely. As we have said, poles of the same character usually last unimpaired for a period of twelve years. To all appearances it was entirely sound, and we can not see that there was anything to indicate that it required any more inspection than was given to it by the injured party. The case narrows itself down to the question, what would a man of ordinary prudence have done under the circumstances? There being nothing in regard to the pole to excite any suspicion as to its soundness or anything to indicate that a further inspection was necessary in order to test its sufficiency, we do not see how it can be said that an ordinarily prudent man would have taken any other steps in regard to it.

The plaintiff in error also insists that the duty of inspecting the pole devolved upon the defendant in error. We find it unnecessary to pass upon the question. But in cases strikingly like this it has been so held by courts of the highest authority in the United States. McIsaac v. Northampton Elec. L. Co., 172 Mass., 89; Flood v. Western U. Tel. Co., 131 N. Y., 603; McGorty v. Southern New England Tel. Co., 69 Conn., 635; Sias v. Consolidated Lighting Co., 50 Atl., 554; Kellogg v. Denver City Tramway, 72 Pac., 609.

For the error pointed out, the judgments of the Court of Civil Appeals and District Court are reversed and the cause remanded.

*Reversed and remanded.*