## TEXAS & N. O. R. CO. v. SARVER.

### No. 12288.

Court of Civil Appeals of Texas. Dallas.

Jan. 15, 1938.

Rehearing Denied Feb. 12, 1938.

Baker, Botts, Andrews & Wharton, of Houston, and Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

BOND, Chief Justice.

Clifford Sarver filed suit against Texas & New Orleans Railroad Company to recover damages for alleged personal injury which he claims to have suffered while in the employ of the railroad company.

At the time of the alleged injury, appellant was engaged in interstate commerce, and had in its employ some 30 or 40 men engaged in relaying rails over a distance of about 6½ miles between Sherman and Denison, removing 80-pound rails and replacing them with 90-pound rails. Appellee was employed in the work, and, at the time of his injury, was operating a bolting machine. The machine weighed about 1,400 pounds, and, while engaged in removing it from the track to the railroad embankment, placed his foot upon what appeared to the eye to be a solid footing, the ground caved in, causing his foot to sink down in a concealed hole, and the weight of the machine to fall upon him.

· Appellee alleged that, on approach of a train, it was necessary and a rule of the company, for the operators of the bolting machine, to take it off the rails and place it about 4 feet distant on the embankment, to let the train pass; that the ground along the right of way where the work had to be performed was full of hidden holes, caused by varmints, ground squirrels, and storms, of which appellant knew or, by the exercise of ordinary care, should have known; and that, knowing the character of the work which appellee was performing and the necessity for the removing of the bolting machine from the track and placing it on firm ground, and the presence of burrowing rodents in the vicinity, appellant negligently failed to tamp the ground along the right of way, particularly at the place where appellee was working, and to take such steps as were necessary to render the ground safe for the work to be done.

Appellant answered by general denial, and specially alleged that the roadbed was a standard, well-built, solid roadbed, of full and sufficient width for the operation of the bolting machine, not defective in the manner alleged; that its construction and width was open and obvious, known to appellee, and the injuries, if any, he sustained resulted from a risk assumed by him; that, if there was a hole in the roadbed crusted over, as appellee alleged, same was a latent defect not known to appellant, its agent or servants, and not discoverable by the usual and proper inspection of the roadbed, and that, if appellant was suffering from any disability, it was due to disease or injury, or abnormal conditions which he had prior to the time he claims to have been injured.

The case was tried to a jury and, in answer to special issues, the jury found, in effect, that appellant was injured in the course of his employment, as the proximate result of negligence of appellant in failing to provide a reasonably safe place for him to work; that appellee was injured while assisting in removing a bolting machine from the track and placing his foot upon what appeared to the eye to be a solid footing, causing the embankment to cave in, his foot to sink down into a concealed hole, and the machine to fall upon him; that appellant was guilty of negligence in failing to make inspection of its roadbed, as a person in the exercise of ordinary care would have made under the same or similar circumstances.

On the verdict of the jury, judgment was rendered in favor of appellee against appellant for the sum of $12,500.

The gravamen of the contentions, as revealed by the pleadings, evidence, and findings of the jury, centers on the issue as to whether or not appellant is liable for appellee's injuries directly caused by a latent defect in the roadbed. On the issue, it might well be stated that appellant was not

an insurer of the safety of its employees. No duty rests upon it to provide absolutely a safe place for its employees to work. The test is the exercise of reasonable care in furnishing a safe place, and the exercise of due care in keeping it in safe condition.

It is shown by undisputed evidence, and alleged in appellee's petition, that the ground where appellee was working, where the bolting machine was removed from the track, was level, looked solid; he testified that he looked at it and could not tell that it was hollow—just looked like firm ground and, in removing the machine, he stepped back and the ground caved in with him; that there was no hole that he could see, until he stepped into it; that it was crusted over; that he didn't see anything until after it caved in; that it was smooth and looked like any other ground. Many other workmen on the job testified to the same effect. There is no testimony that appellant or any of its agents or employees knew of the alleged defect in the roadbed, and it might well be assumed that, if appellee did not and could not have discovered it by looking, no other agent or servant of the railroad company could have done so.

The rule is well settled that an employee assumes the risk of latent defects, of which the master did not know and which could not be discovered in the exercise of ordinary care. Missouri, K. & T. Ry. Co. v. Romans, 103 Tex. 4, 121 S.W. 1104, 1105; Southern Pac. Co. v. Green, Tex.Com.App., 280 S.W. 198; Texas & P. Ry. Co. v. Meek, Tex.Civ.App., 72 S.W. 2d 616; Carlisle v. City of Waco, Tex.Civ. App., 56 S.W.2d 208; Southwestern Telegraph & Telephone Co. v. Tucker, 102 Tex. 224, 114 S.W. 790. If there was a hole in the roadbed, into which appellee's foot sank, whether made by a varmint or otherwise, it is conclusively shown by the evidence and admitted by appellee that it was a hidden, concealed hole, not discoverable by the exercise of ordinary care, by inspection in the usual, customary, and proper manner of inspecting roadbeds. Appellant showed that the roadbed, including the place where appellee was working, before and on the day of the alleged accident, had been repeatedly inspected by the roadmaster looking over the roadbed, and that was the usual and customary method of inspection; that it was, so far as the eye could see, in good condition and free from holes. There is no testimony offered that such inspection was improper or inadequate, or that any other or different inspection would have disclosed the concealed hole in the roadbed. There was no reason to suspect that the concealed hole was present in the roadbed, except that ground squirrels, burrowing rodents—as chipmunks and gophers—infested that locality. There is no rule of law that imposes upon the master the duty to discover latent defects, where there is nothing to indicate that any such defect exists, and, we think, the habitat of small burrowing rodents, as ground squirrels, does not call for greater care. What caused the hole, no one knows; as to when and what caused it, the evidence fails to supply any fact; the theory is advanced, however, that it was caused by the rodents, based upon the fact that ground squirrels infected the locality, and their peculiarity of burrowing holes is to conceal their habitat. The theory may be acceptable, but, we think, it is not sufficient to require the railroad company to exercise the degree of care of tamping the roadbed to find such holes.

It would be unreasonable to require the railroad company to tamp the entire roadbed for a distance of 6½ miles with applied force strong enough to resist the crust or unbroken earth crowning concealed holes, made by rodents or otherwise, in order to free itself from the imputation of negligence. The resistance of the crust or earth above the hole, the instrument, or means used, necessarily would determine the volume of applied force to detect the hidden defect. If appellant was required to tamp the roadbed to make it free from latent defects, certainly it would then be required to put sufficient pressure upon the tamping device as to successfully reveal pitfalls. We do not believe that the railroad company is required to do such an unreasonable thing as to tamp its roadbed at intervals to make sure whether a varmint, ground squirrel, or a storm has made it unsafe for employees to work in repairing and improving the railroad company's service.

In the case of Missouri, K. & T. Ry. Co. v. Romans, supra, Romans was injured by making a misstep and his foot going into a concealed hole, which caused him to fall. Mr. Justice Williams, for the Supreme Court, said: "There might be negligence in causing or permitting the existence of a hole concealed as this one was at any place where people ought to be expected to pass, but, to show it, the evidence must justify the inference that some of the employes of the defendant for whose conduct it is responsible caused that condition, or knew, or

with ordinary care would have known, of its existence and have remedied it before plaintiff was hurt, and that some such happening as that of plaintiff's hurt could reasonably have been anticipated. * * * The evidence fails to supply any fact from which any one can say when, how, or by whom the condition which made the use of the premises dangerous to plaintiff was produced. The evidence equally fails to show that the condition had existed so long as to justify an inference that the defendant knew, or by the exercise of any degree of diligence that could be exacted of it ought to have known, of it before plaintiff was hurt. * * * No hypothesis on which liability could be founded is supported by evidence, unless it is true that the mere existence of the hole in the condition described by the witnesses is of itself evidence of negligence. This could only be said if it were true that a hole so situated could not probably have existed without knowledge on part of some employe of defendant for whose negligence it is responsible. * * * The very gist of plaintiff's complaint is that the hole was concealed."

There being no further testimony raising the issue of negligence on the part of the railroad company, and appellant not being guilty of any negligence in failing to discover the defect in the roadbed that contributed to the injuries of appellee, the findings of the jury and the judgment based thereon find no support in the pleadings and the evidence. The conclusion necessarily follows that all other assignments should be overruled, and the judgment of the lower court should be reversed and judgment here rendered for appellant; it is so ordered.

Reversed and rendered.