TUCKER DUCK & RUBBER COMPANY *v.* HARVEY.

4-6420                                    154 S. W. 2d 828

Opinion delivered October 20, 1941.

*Paul E. Gutensohn* and *Warner & Warner,* for appellant.

*Martin Green* and *Partain & Agee,* for appellee.

McHANEY, J. Appellee sued appellant, Tucker Duck & Rubber Company, a domestic corporation, and appellant, Luther Rembler, a foreman in its plant, to recover damages for personal injuries allegedly sustained on March 29, 1940, in moving a barrel of paint from the paint house or room which was just south of and adjacent to the room in which he was working, pursuant to the order of Rembler, his foreman. The negligence alleged was that the floor of said paint room "was covered with oil, grease and other substances, which the defendants had carelessly and negligently permitted to accumulate there and to remain," a fact known to appellants and unknown to appellee, but notwithstanding his knowledge thereof said Rembler carelessly and negligently directed appellee to move or assist in moving said barrel of paint which weighed about 350 pounds; that when he attempted to move the barrel, "he slipped and fell in said oil and

grease and other substances, which with the weight of said barrel of paint and his own exertions in moving same caused him to be seriously and permanently injured,'' as particularly set out in the complaint. Damages were prayed in a large sum.

After unsuccessfully attempting to have the service upon them quashed, appellants answered, denying all the material allegations of the complaint, and pleading contributory negligence and assumption of risk of appellee in bar of recovery.

Trial resulted in a verdict and judgment for $2,000 against appellants and they have appealed.

The complaint charges three acts of negligence: (1) permitting oil, grease and other substance to accumulate on the floor around said barrel of paint; (2) failing to inspect the premises; and (3) foreman Rembler's ordering appellee to move said barrel of paint when he knew or should have known that it was dangerous and in giving no warning to him of such dangerous condition. At the conclusion of the evidence for appellee and at the conclusion of all the evidence in requested instructions 1 and 2, appellants moved for directed verdicts in their favor, which the court refused, and this assignment of error is the basis of the first argument made for a reversal and dismissal of the action. We think the court erred in refusing to direct a verdict for appellants.

The facts, stated in the light most favorable to appellee, are substantially as follows: Appellee is 46 years of age, is and has been for more than fifteen years a resident of Fort Smith. He worked for appellant company for fifteen years before he was hurt on March 29, 1940. He worked in various capacities, as a common laborer at different places in the factory, as watchman when a part of his duties were to keep the floor of the paint storage room clean and free from paint, which he did, and he was regularly employed at the time of his accident in framing cots. At the time of the accident he was working in the dip or paint house, making what is called ''35 chairs.'' The company makes camp furniture. The room where the paint is stored is just south of the

room in which he was working and is adjacent to it. It is a room 16 x 30 feet and he had worked in said room many times, but not for two months previous to the accident. At about 8:30 a. m., Rembler told appellee to go help Paul Johnson, who operated the machine or gun to spray paint on the chairs, get a barrel of paint. The barrels were setting on end in rows and Johnson got on top of them and found the one he wanted. He said: "Mr. Johnson pointed out the barrel there and I started to move the barrel and my feet slipped and threw me in a strain and I slipped and fell and the barrel struck me in the side. . . . The right side and hip and it threw my back in a cramp and when I got the barrel of paint straightened back up. . . ." He said it was dark in there at the time although the room had two or three windows and two doors in it, and that the shadow of the barrels made it dark around the barrel to be moved; that oil and paint were on the floor, but darkness in the room was not a ground of negligence alleged, and he could not see it when he went in; that he observed paint on the bottom of his shoe as he slipped and fell; and that he rolled the barrel out with the help of another after he got it straightened out. Rembler and Johnson both testified there was no paint on the floor and Johnson denied that appellee slipped or fell. Two witnesses for appellee say there was paint all over the floor. For the purpose of this opinion we assume there was paint all over the floor and of course around the barrel to be moved, and that it was somewhat dark in the shadow of the barrels, although it is undisputed that there are at least three windows and two doors in the room. Paul Johnson said there were four windows, one on the south side, two on the east and one on the west. Appellee says he undertook to handle a 500-pound barrel of paint alone, without the assistance of Paul Johnson, when he was told to assist Johnson in moving it. If he undertook, as he says, to handle it alone, he assumed the risk of so doing, as he was instructed to assist Johnson, who says they had to move two other barrels to get the one he wanted and that he and appellee handled them together and that appellee did not slip or fall in moving either barrel,

because there was nothing to slip on, but that he complained of straining his back after moving the third barrel. But, as stated above, we assume there was paint all over the floor and that he slipped in it. Even so, it was as open and obvious to him as it was or could have been to either Rembler, Johnson or his two witnesses who say there was paint all over the floor and who say they were able to see it when they were sent in there to move barrels just as appellee did.

The law is well settled that the master is not an insurer of the safety of his servant and that his only duty is to exercise ordinary care to furnish him a reasonably safe place to work and reasonably safe instrumentalities with which to work, and the servant has the right to assume that the master has performed this duty, and, as said in *Mosely* v. *Raines,* 183 Ark. 569, 37 S. W. 2d 78, ''It is, however, also thoroughly established by the decisions of this court that the master is presumed to have performed this duty, and the servant cannot recover for an injury unless he shows that the master was guilty of negligence and that the negligence of the master caused his injury. The master is liable for the consequences of his negligence, but he is not an insurer of the employee's safety.'' That language was quoted in the recent case of *Kroger Gro. & B. Co.* v. *Kennedy,* 199 Ark. 914, 136 S. W. 2d 470.

It is difficult to perceive wherein appellants were negligent under the facts above stated. The mere fact that Rembler told appellee to go to the paint storage room and assist Johnson in getting a barrel of paint could not constitute negligence, assuming there was paint on the floor and that Rembler knew it or should have known it. Nor do we think Rembler was under any duty to appellee to apprise him of that fact or to warn him that there was paint on the floor and that he should be careful not to slip or fall or to let a barrel of paint fall on him. ''Something may properly be left to the instinct of self preservation and to the exercise of the ordinary faculties which every man should use when his safety is known to be involved,'' as we said in *Mo. Pac. R. Co.* v. *Martin,* 186 Ark. 1101, 57 S. W. 2d 1047. In *Williams Cooperage*

*Co.* v. *Kittrell,* 107 Ark. 341, 155 S. W. 119, Chief Justice McCulloch quoted from 1 Labatt on Master & Servant, § 238, as follows: ''The master is not required to point out dangers which are readily ascertainable by the servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses. The failure to give such instructions, therefore, is not culpable where the servant might, by the exercise of ordinary care and attention, have known of the danger, or, as the rule is also expressed, where he had the means necessary for ascertaining the conditions, and there was no concealed danger which could not be discovered.''

Now, if the paint was on the floor to the extent alleged in the complaint and as testified to by his witnesses, then it appears certain that appellee should have seen it, as it must have been perfectly open and obvious in a room with four windows, two of which were on the east side, where the light would come from at 8:30 a. m., the time he was injured. Appellee was not a young and inexperienced employee, being 46 years old with 15 years' experience as an employee, during which time he·had frequently worked in the paint storage room, knew that paint did get on the floor and that a part of his duties had been to keep that room clean by sweeping it and scraping the paint from the floor. Therefore, under the rule just quoted from Labatt and approved by this court, appellants were not required to point out to appellee the danger of stepping in wet paint, if it was wet, because it was readily ascertainable by him if he had made an ordinarily careful use of the knowledge, experience and judgment which he possessed. He either knew the conditions, or ''he had all the means. necessary for ascertaining the conditions, and there was no concealed danger which could not be discovered.'' By walking in the room and attempting to handle the barrel alone, in broad open daylight, without looking to see if there was any paint on the floor, and without waiting for Johnson to assist him, he assumed the risk of any injury he might sustain. As we said in *Temple Cotton Oil Co.* v. *Brown,* 198 Ark. 1076, 132 S. W. 2d 791, ''If oil was on the floor, it was perfectly open and obvious. He says himself that he

did not look, but if he had he could have seen it, if it was there, . . ." So here, if appellee had looked he could have seen the paint on the floor, if it was there.

For the error in failing to direct a verdict for appellants, the judgment will be reversed, and, as the cause has been fully developed, it will be dismissed.

SMITH & HUMPHREYS, JJ., dissent.