**OKLAHOMA NATURAL GAS CO.**

v.

**WALKER et al.**

No. 35237.

Supreme Court of Oklahoma.

Sept. 29, 1953.

Rehearing Denied March 23, 1954.

Application for Leave to File Second
Petition for Rehearing Denied
April 27, 1954.

Paul Pinson, and Walter B. Hall, Tulsa, for plaintiff in error.

Lawrence Jones, Bristow, James E. Driscoll, Homer H. Bishop, and William E. Bishop, Seminole, for defendants in error.

WILLIAMS, Justice.

Parties are referred to herein as in the trial court.

Plaintiff, administrator of the estate of Albert Harting, sued defendants, Oklahoma Natural Gas Company and Bob Terry, for damages for the wrongful death of Albert Harting.

Plaintiff's petition alleged that defendant Oklahoma Natural did not fulfill the following duties owed to plaintiff's deceased: to furnish to him a reasonably safe place in which to work; to furnish reasonably safe, competent and qualified employees with whom to perform the work; to warn him of hidden, unknown traps, dangers and hazards; and to provide or to see that such work was performed in such a manner as to prevent great bodily harm, injury and death; that the violation of these duties was the proximate cause of death.

Defendant Oklahoma Natural had a certain pipe line near a creek; said line was endangered by the erosion of the creek bank and it was decided to straighten the creek bed by digging a new channel and putting up a levee or dike. For this purpose Oklahoma Natural hired a bulldozer belonging to Bob Terry, and hired John Place, ordinarily Terry's employee, to operate the dozer. Harting, the deceased, was transmission superintendent for Oklahoma Natural, and the location of this job was in his district.

In its answer, Oklahoma Natural made a general denial and alleged that Bob Terry was an independent contractor and solely responsible for the accident. Immediately before trial, the court allowed Oklahoma Natural to amend its answer by pleading in the alternative that the accident was caused by the negligence of a fellow-servant, that it was due solely to an act of God, and that it was an unavoidable accident. The answer could also be construed as pleading contributory negligence.

The evidence showed that on the morning when the work was to start, Harting, Terry, W. A. Hazard, District Superintendent for Oklahoma Natural and Harting's immediate superior, and John Place, the bulldozer operator, all met at the job site. Harting, Terry and Hazard talked over the proposed work. Hazard told Harting "where he wanted the work started and how he wanted it done." Hazard then left and did not come back to the site. Harting and Terry relayed the instructions to Place, who started the work. Harting did not stay at the job site, but would come back two or three times per day to look it over.

The plan was for the dozer to cut the new channel and build the levee or dike to a point where a drag line could be brought in over it, the drag line then to move some clay. When the drag line was brought in, it could not do the job, and Harting asked Place if he could do it with the dozer; Place said that he could and started doing so. On the third day after the job started, Harting came out to the site; Place saw him coming and stopped his dozer in the creek bed about 6 or 7 feet from a steep bank about 15 feet high. Harting came around to a point between the dozer and the bank, looked at the bank and said "Reckon that would fall on a fellow?"; Place said "It might, some does" and at that moment

the bank started to crumble; it crushed Harting against the dozer, almost covering him up, and inflicted injuries from which he died four days later.

At the bottom of the creek bank above referred to was some clay which the dozer had been moving. The method employed was to cut into the bottom of the bank with the dozer blade; this would occasionally cause the bank to cave in, at which times the dozer operator would move the loose dirt which had fallen, on to the dike. The clay he would place in washed out portions of a previously existing levee.

An engineer who qualified as an expert witness testified that tests showed that the creek bank in question, although having a reddish color like clay, contained only about 9 percent clay; that the remainder was sand and silt; that a clay bank would be far less likely to crumble; that to an ordinary observer, without special training or experience, the bank would look like a clay bank. He also testified that the usual custom and practice in the excavation business was to start at the top of any bank more than about 5 feet high and cut it at an angle of about 30 degrees, instead of starting at the bottom and purposely causing it to cave in, the rule of thumb being that the head of the man working in the cut (or creek bed, as in the case at bar) should be above any dirt that might possibly cave in.

The jury returned a verdict for the plaintiff and against Oklahoma Natural, awarding a substantial amount of damges. The jury found for Terry and against plaintiff, as to such defendant.

Defendant Oklahoma Natural has appealed to this court from the judgment on such verdict, and from the order overruling its motion for new trial.

Petition in error alleges 25 errors in the court below, and they are discussed under 11 different propositions in the brief filed by Oklahoma Natural.

■ The first one is that Bob Terry was an independent contractor, and that the injury was caused by his negligence, and defendant is therefore not liable. However, the record before us shows that Oklahoma Natural plainly and unequivocally abandoned this defense in the presence of the jury; consequently it cannot be presented here. See Wester v. Lucas, 177 Okl. 147, 57 P.2d 1179, wherein the court said:

"Admissions of counsel, made deliberately and intelligently during trial, in court's presence and reduced to writing, constitute high species of evidence, and parties may not be permitted at their pleasure to retract such admissions, absent some showing of fraud, mistake, or lack of authority to make them."

■ The second proposition is that the deceased was either (a) a supervising superintendent or vice principal over Terry and Place or (b) a fellow servant of Place; that the accident was due solely to the negligence of Terry or Place, and defendant is therefore not liable. In support of (a) above Oklahoma Natural cites City of Edmond v. Washam, 190 Okl. 140, 121 P.2d 300, 302, to the effect that the rule imposing upon the master the duty to furnish a reasonably safe place to work, reasonably competent fellow servants, and reasonably safe tools and appliances, does not apply to a "skilled and experienced superior servant or vice principal intrusted by the employer with the *complete control and supervision of the work and the method of doing it*". (Emphasis supplied.) But the evidence in this case does not show that Harting had "complete control and supervision of the work and the method of doing it". Witness Terry testified as follows:

"Well, he (meaning Hazard) just told him where to go to work and how to cut it. He wanted it cut straight through, or one blade wide, in order to open up * * *. Well, the reason they was doing that, they didn't want to spend too much money, and that—they didn't want to spend too much money on that particular job; that was the words they said while I was standing there with them."

With regard to the change in plans (to move the clay from the bank with the dozer instead of the dragline) Terry testified:

"Well, that was the first job was done. See, we were going to get it started where they could make the levee to the north where they could get the dragline in and

start moving the clay. Of course, after they couldn't do it with the dragline, they wanted to use the cat and put it in. * * * Mr. Harting told him that, or Mr. Hazard told us that. It was when they was over on the bank."

All of the above is competent evidence from which the jury would have been justified in believing that Hazard was in charge and that Harting was not a vice principal or superior servant as contended by Oklahoma Natural.

■ As to the second part of this proposition (that Harting was a fellow servant of Terry and Place, that the accident was caused solely by their negligence, and that Oklahoma Natural was therefore not liable, under the fellow-servant rule), there was competent evidence reasonably tending to show that the accident was caused by the combined negligence of Place (who was experienced in the excavation business and knew that the creek bank had been caving but did not warn Harting of the danger) and of Hazard (who gave specific instructions as to how the work should be done and failed to warn Harting of the danger involved). See 35 Am.Jur., Master and Servant, sec. 340, which reads in part as follows:

" * * * it is an equally well-settled and generally recognized rule that if the negligence of the employer combines and concurs with the negligence of the fellow employee, and the acts of both thus contribute to produce the injury, the employer may be held liable * * *".

The fellow-servant rule is therefore inapplicable in the case at bar. Hazard's failure to warn will be more fully discussed under proposition six below.

The third proposition of Oklahoma Natural was that Harting assumed all of the risks incident to his employment, and Oklahoma Natural was therefore not liable. Twelve cases are cited in support of this contention; all of them are from other jurisdictions. In the case at bar, the engineer who qualified as an expert witness said:

"No, the presence of clay in it is, I would say, the betraying menace in soils, unless he is familiar with the other materials that go to make it up—the high sand content in the soil kills the clay, and therefore the color of it, if a man works at that bank, just at a distance he would think it had a high cohesive ability, but the sand cuts the clay and reduces the ability to adhere together. * * * I would say that it would take an engineer to tell that that material might collapse."

■ The above was competent evidence from which the jury would have been justified in finding that the danger was not apparent to Harting. See Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okl. 717, 129 P. 747, 748, wherein the court said that the servant "does not, however, assume such risks as are created by the master's negligence, nor such as are latent or are only discovered at the time of the injury."

■ Propositions four, six, and seven all rest on the assumption that Harting had notice of the danger to which he was exposed; since we have already shown that he had no such notice, such propositions are without merit. In connection with proposition six, however ("there is no duty to warn an employee of a danger as obvious to the employee as to the employer"), we call attention to 56 C.J.S., Master and Servant, §§ 247, 248 and 284, respectively, which read in part as follows:

"An employer is not responsible for injuries to his servant resulting from latent dangers or defects unless he knew or should have known thereof."

"Generally speaking an employer is chargeable with notice or constructive knowledge of any danger or defect which he should have discovered by the exercise of reasonable diligence."

"It is the duty of the master to warn and instruct his servant as to defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge, actual or constructive; prima facie this duty requires the master to warn and instruct the servant with reference to all abnormal or unusual, peculiar or extraordinary risks or hazards of the employployment * * *."

We have said that there was evidence reasonably tending to show that the danger which existed by reason of the deceptive appearance of the creek bank was a hidden and latent danger. We also believe it was one of the "abnormal or unusual, peculiar or extraordinary risks or hazards of the employment" with regard to the excavation business to which the above quoted rules of law are applicable. The general verdict of the jury herein for plaintiff implies a finding against defendant on the particular issue of negligence in failure to warn; it also implies a finding that the danger in the case at hand was a danger of which the master should have known, in the exercise of reasonable care and diligence. Since Harting had no knowledge, either actual or constructive, of the danger, and since the master had constructive notice of such danger, it follows that defendant's failure to warn constituted negligence. See also Mid-Continent Petroleum Corp. v. Jamison, 197 Okl. 387, 171 P.2d 976, with regard to the duty of the master to warn and instruct a servant inexperienced in the work for which he is employed. Another and shorter answer to these three propositions is that they amount to a contention that deceased was, upon the occasion of his fatal injury, guilty of negligence which contributed to the causing thereof, but that such contention was fully and finally resolved against defendant by the verdict of the jury based upon evidence reasonably substantiating same.

Defendant's propositions five and nine concern matter of which no proper complaint was made at the time of trial. Proposition five was error of the court in defining proximate cause in his instructions to the jury, and proposition nine concerned alleged misconduct of opposing counsel. The instruction given on proximate cause is a fair and adequate statement of the law relative thereto and no objection was made thereto. No substitute definition of proximate cause was offered by way of a requested instruction, and no objection was made to the alleged misconduct of opposing counsel. The following rule therefore applies:

"An assignment of error on a question not raised in the trial court will not be considered by this court on appeal." Hendrix v. Ward, 203 Okl. 173, 219 P.2d 203.

The eighth proposition of Oklahoma Natural is that there is no duty on the part of the master to make rules, regulations or provisions for the method of doing a perfectly simple operation such as was involved in this case. Sole authority cited is 35 Am.Jur. page 584, Master and Servant, which supports generally the rule of law as above stated. This line of argument of course assumes that the work here involved was "a perfectly simple operation". Whether it was such was a question of fact for the jury, and the jurys' general finding for plaintiff implies a finding against defendant on this particular question.

The tenth proposition is that the verdict of the jury was so excessive as to "strike mankind at first blush as being influenced by passion and prejudice or sympathy, or all three." In this connection we note that the deceased was 48 years old at the time of his death; that he was earning almost $400 per month; and that he had a life expectancy of about 22 years, according to the actuary who testified. Oklahoma Natural complains that the jury awarded plaintiff an amount equal to the highest figure shown on the chart used by the actuary for loss of probable earnings. In this, counsel is mistaken. The highest figure on the actuary's chart was over $12,000 above the amount of the award on this cause of action. We note that the trial court instructed the jury that the testimony of the actuary should not be used as an absolute basis of calculation, but only as a guide, in determining the amount of damages, if any, suffered by plaintiff. In this connection, it is elementary that the jury was not bound by the testimony of the actuary, and could have awarded damages less than or in excess of the amount named in this testimony. See Poston v. Alexander, 191 Okl. 653, 132 P.2d 343, the second syllabus of which is as follows:

"The credibility of witnesses and the weight and value of their testimony, in ac-

tions of legal cognizance, are questions exclusively for the jury to pass upon."

■ Defendant also complains of the jury's award of $10,000 for pain and suffering during the four days between his injury and his death. The only testimony on this point was by a physician, and such testimony was not denied. It is sufficient to say that the physician's testimony established the fact that the deceased was conscious for a good part of the last four days of his life, and that he did suffer excruciating pain. It is undenied that the amount of damages to be awarded for pain and suffering is peculiarly a question of fact for the jury; in the case at bar, there was competent testimony tending to support the verdict in this regard. Under these circumstances, such verdict will not be disturbed on appeal.

The last proposition of Oklahoma Natural is that "the verdict of the jury in this case in itself destroys legally the plaintiff's hope of recovery." The line of argument followed is that the verdict was in effect a finding that Place, the bulldozer operator, was not guilty of negligence; that if he was guilty of no negligence, then there was no need for any rules or regulations as to the method of work used; that therefore the master's negligence in not furnishing such rules and regulations could not have affected the result because it is determined that the method of work was proper.

It is perhaps unnecessary to point out that the jury was not required to find Place guilty of negligence in order to find for plaintiff in the court below. In that connection, we are unable to see how counsel can read into the jury's verdict for plaintiff a finding that Place was not negligent, since Place was admittedly an employee of Oklahoma Natural.

By way of a summary, we think there is competent evidence reasonably tending to show: that Hazard, the district superintendent, gave specific instructions as to how the job should be done; that Harting, the deceased, merely relayed these instructions to Place; that the creek bank looked like clay, but was not, and was therefore more likely to cave in than would appear to an ordinarily prudent observer; that because Oklahoma Natural had placed itself in the position of a master engaging in the excavation business, it should have known of the "abnormal or unusual, peculiar or extraordinary" danger existing because of the deceptive appearance of the creek bank; that it therefore had a duty to warn Harting, who was inexperienced in the excavation business, of the latent danger existing; that it did not perform such duty; and that Harting, as a proximate result thereof, and of the negligence of Place, as treated in proposition 2(b) above, combining and concurring therewith, lost his life.

■ Assuming the jury found such facts to be true, the negligence of Oklahoma Natural consisted of Hazard's instructions to Harting to have the job done in a dangerous way, and in the failure to warn Harting of the existence of "an abnormal or unusual, peculiar or extraordinary" danger of which Harting, as an ordinarily prudent person with no special training or experience in such matters, had no notice, actual or constructive. The verdict of the jury negatives the existence of any contributory negligence upon the part of Harting.

■ In considering the evidence in this case, we have followed the well settled rule of law that where there is competent evidence reasonably tending to support the verdict of the jury, the same will not be disturbed on appeal. See Loveland v. Loafman, 92 Okl. 133, 218 P. 851, wherein the court said (Syllabus 4):

"The jury is the exclusive judge of the facts, and where there is competent evidence upon which the verdict is found, the court will not disturb the verdict so found."

The judgment of the trial court is affirmed.

CORN, DAVISON, ARNOLD and BLACKBIRD, JJ., concur.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH and O'NEAL, JJ., dissent.

HALLEY, Chief Justice (dissenting).

The majority opinion is incorrect because in my judgment the trial court and the majority in this Court have lost sight of the decisive question in this case. It is simply

"What was the negligence of the defendant?" I say unqualifiedly that there was no negligence on the part of the Oklahoma Natural in this case and will endeavor to point out why. I think that this Court and the trial court were both misled by such statements that the defendant was flagrantly negligent but it was never pointed out how it was negligent.

The undisputed facts in this case show that the defendant desired to straighten a creek across which one of its lines was laid. Oklahoma Natural hired Bob Terry, a bulldozer owner, to cut a ditch with the bulldozer across a horseshoe bend in the creek. Mr. Hazard was District Superintendent for the defendant and the deceased, Harting, was transmission superintendent under Mr. Hazard. Mr. Hazard, Mr. Harting and Mr. Terry met at the place where the ditch was to be cut near the bank of the creek. They discussed the job and what was to be done, where the ditch was to start and where to end, its width and its depth. This was a simple dirt moving job and the work in the ditch was to be done entirely with the bulldozer. John Place was employed by Mr. Terry as the operator of the bulldozer and did so operate the machine on the job. Mr. Harting showed Place where the channel was to be cut and a levee built on the north. The levee was necessary so a dragline could come across and get clay out of the creek bed to put on the dike which was a part of the operation. The work with the dragline was moving so slowly that Harting asked Place if he could put the clay on the bank with the bulldozer and Place gave him an affirmative answer and the next day started moving dirt with the bulldozer onto the dike. He would cut into the side of the creek bank with the blade of the machine and knock the dirt down and then move it over the dike. It was a simple operation. No one instructed Place as to how he should operate the bulldozer. Harting only told him the job he wanted done and Place did it. Harting was the only employee in a supervisory capacity on the job. After Mr. Hazard left, which was immediately after the conference of Hazard, Harting and Terry on the morning of the first day, the work started. John Place was paid by Terry. Mr. Terry received $10 an hour for the machine and driver.

On the afternoon that Mr. Harting was killed Mr. Place stopped the bulldozer about six feet from the bank and Mr. Harting walked up to the machine annd placed himself between the machine and the bank with his back to the bank. After he had exchanged a few words with Mr. Place, the bank collapsed and Mr. Harting was injured by the dirt falling on him and death resulted four days later.

It is to be remembered that Mr. Harting was transmission superintendent. What all his duties were the record does not reveal but unquestionably he was in charge of this particular job. He had been with the defendant for twenty-seven years. He had started as a ditch digger and had various jobs and was experienced with work of the gas company, much of which is moving dirt. We are all familiar with the general rule that employer must furnish his employee a reasonable place to work but the employer is not the insurer of the life of the employee and does not have to furnish a place of work absolutely safe.

All Mr. Harting had to do on this job was to check and see if Place was staying on the job and conforming to his instructions. He had nothing to do with the actual operation of the machine or the moving of the dirt. He was not called upon to place himself in a position of peril by his duties. He could have done all that was required of him several feet back from the creek bank in a place of absolute safety. There was nothing hazardous about the work being performed. We held in Oklahoma City v. Caple, 187 Okl. 600, 105 P.2d 209, that the excavation of a sewer ditch is not inherently dangerous.

The majority opinion says it was a jury question as to whether this dirt that was being moved should have been analyzed to determine its qualities. It is ridiculous to think that in a simple dirt moving operation as this that the dirt would have to be first analyzed before it would be safe for a supervisor to go around the job. I venture that such an examination is never made on simple operations of this kind. The reason being that it is wholly unnecessary.

The majority opinion talks of latent defects. What was there to indicate latent defects? It was held in Texas & N. O. R. Co. v. Sarver, Tex.Civ.App., 113 S.W.2d 317, that where there is nothing to indicate to an employer exercising ordinary care that latent defects exist he is under no duty to discover them. We think that this is a sound rule, especially as applied to this case, as the deceased was more familiar with the operations on this job than any person connected with the defendant.

The employer is not bound to warn and instruct an employee as to dangers which are patent and obvious. This was our holding in Janow v. Lewis, 197 Okl. 415, 172 P.2d 315, and Phillips v. Tackett, 168 Okl. 143, 32 P.2d 29. I say it was patent and obvious that a creek bank from which dirt is being knocked by a bulldozer may collapse. It has been held by courts of other states under fact situations very similar that the employer is not liable. In Village of Montgomery v. Robertson, 229 Ill. 466, 82 N.E. 396, it was held that the employer was not liable for injuries to the employee caused by the falling of overhanging banks in a gravel pit. In Hassett & Co. v. Richardson, 183 S.W. 900, 169 Ky. 342, the employer was held not liable for injuries to an employee caused by the fall of material during the operation of a steam shovel.

If the danger here was unexpected, improbable or unusual the master would not be liable. We have not said this but it is approved by many states and in Atchison T. & S. F. Ry. Co. v. Wyer, 8 Cir., 8 F.2d 30. See 56 C.J.S., Master and Servant, § 298.

This Court has held that where the servant has equal knowledge with the master the rule that the master must furnish safe tools does not apply. Nelson v. Wolverine Petroleum Corp., 189 Okl. 351, 117 P.2d 787, and Leierer v. Thompson, 190 Okl. 233, 122 P.2d 387. I think we should apply the same rule as to places in which to work.

I think the rule that is particularly applicable to this case is that where a servant knows and appreciates the dangers of his employment, the master is under no obligation to give warning and instructions thereof and a like result follows where by the exercise of reasonable care the servant could have known of the dangers likely to be encountered by him. Again I say, Mr. Harting knew more of this situation than anyone in the defendant's organization. He was the one who told Place to use the bulldozer on the dike. It is not clear from the record that anyone else employed by the defendant knew that the dozer would be used for such a purpose. The Supreme Court of Arkansas when considering a similar case said: "Where employee's knowledge of the perils of the employment equal or surpass that of the master, then there is no duty upon the master to apprise the employee of somthing already well known to him", J. L. Williams & Sons v. Tompkins, 195 Ark. 1146, 114 S.W.2d 845, 847, and in Tucker Duck & Rubber Co. v. Harvey, 202 Ark. 1033, 154 S.W.2d 828, said: "A master is not required to point out dangers where they are readily ascertainable by servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses, nor where servant had all means necessary for ascertaining the conditions and there was no concealed danger which could not be discovered." What was there to this job that would challenge anyone to make a deep investigation as to the type of soil. It all could be moved by the bulldozer and there was no duty on deceased to get near the bank being hit by the machine.

This whole subject under consideration has received careful treatment in 56 C. J. S., Master and Servant and Sec. 295 covers the foregoing item.

The fact that the employee here momentarily forgot the perils surrounding when he went to talk to Place does not show any fault on the part of the master. As has been said, who was to tell Mr. Harting not to get too near the bank. Certainly Mr. Hazard had no idea an experienced employee would get so near the bank. The above rule has been laid down in Fontaine v. Johnson Lumber Co., 76 N.H. 163, 80 A. 338. I think it is sound and applicable here.

Further this Court has held in City of Edmond v. Washam, 190 Okl. 140, 121 P.2d 300, and in Atchison, T. & S. F. Ry. Co., et al. v. Kennard, 199 Okl. 1, 181 P.2d 234,

that the rule requiring the master to furnish a reasonably safe place for the servant to work does not apply to superior servants. Certainly under the facts in this case Mr. Harting was a superior servant. He was transmission superintendent and in full charge of this job.

But I say that ignoring all other considerations that the deceased was furnished a reasonably safe place to work, that it offered no perils whatsoever in the carrying out of the duties that rested on him as it was not necessary for the deceased to place himself in a perilous position.

We know that as a general rule in order to show the master's negligence the plaintiff must make an affirmative showing of actual knowledge on the master's part of the danger or else prove facts which show that in the exercise of ordinary care he should have known it. If there was any condition here that was not known to Mr. Harting, it was a latent danger and the Oklahoma Natural would not be any more likely to know about it than he and certainly it would not have been discoverable on an ordinary inspection. I say that in this case where the selection of the place of work was left up to the employee as here that the master is not liable for injuries arising out of that selection of the place of work or danger arising in the progress of the work. In Kansas City M. O. Ry. Co. v. Bishop, 140 Okl. 277, 282 P. 1091, 1094, we denied recovery to a plaintiff in a case much stronger than the case at bar. There the plaintiff was engaged in building a concrete tank. This statement was made in that case:

"Could it be contended that the defendant did not furnish the plaintiff a safe place in which to work? These employees were engaged in removing a platform from the top of the tank. There was a constant change in the place due to their own labors in removing the parts of this structure. They were really dismantling the 'place,' and the same became less safe as they proceeded to remove the boards from the stringers, for this made it possible for one to fall into the tank. But the nature of the work that they were engaged in and their experience made it clear that they were not engaged in a perfectly safe business. The man who puts a roof on a house, or paints a dwelling, or builds a chimney, is not engaged in a safe business, for he may fall; but, as we see it, there was nothing which the defendant did which made it unsafe, nor was any omission of defendant responsible for making the place more hazardous. * * *"

We are back again to the same proposition. From the standpoint of one engaged in a supervisory job, there was no danger in the work but if it was dangerous no one for the defendant was in a better position to know it than the deceased.

I think that there were other errors in this case that would necessitate a new trial such as the improper argument by counsel for both the plaintiff and the defendant, Bob Terry.

I also regard the amount of damages allowed as excessive but since I am so firmly of the opinion that the demurrer to the evidence of the defendant Oklahoma Natural Gas Co. should have been sustained, I will not take up these other questions.

I dissent.

WELCH, Justice (dissenting).

I think the statements and the citations in the dissenting opinion of HALLEY, C. J., are unanswerable. Appellate courts are always loath to reverse judgments for recovery of damages in cases involving circumstances which resulted in serious personal injury or death. But in the even administration of justice, appellate courts must reverse such judgments when there is no showing that negligence of the defendant caused the injury or death. Some take the opposite view in this case, and, of course, Justices of an Appellate Court are entitled to have their individual views and their differences of opinion, and I respect them even when I cannot agree with them.

Here there was no negligence of the Natural Gas Company which caused the death of Mr. Harting, and unfortunate though his death was, and however accidental it was, it is my view that this court should not approve liability for his death against any corporation, or against any individual except for proof of some negligence which caused it. Therefore I too must dissent.