Jimmy AUSTIN, d/b/a Austin Drilling Company and Denny Loyd Harwell, Plaintiffs in Error,

v.

Larry Dale KING, Defendant in Error.

No. 40668.

Supreme Court of Oklahoma.

July 20, 1965.

Bishop & Bishop, by H. Corky Bishop, Seminole, for plaintiffs in error.

Dick Bell and Frank Seay, Seminole, for defendant in error.

WILLIAMS, Justice.

The action from which this appeal arises was initiated by defendant in error against plaintiffs in error and Billy F. Rodebush to recover damages for personal injuries resulting from a collision of motor vehicles. Continued reference to the parties is as they appeared in the trial court. Plaintiff dismissed as to Rodebush prior to the trial below.

In his amended petition plaintiff alleged that on February 21, 1962, he was a passenger in an automobile driven by Billy F. Rodebush traveling "in a northerly direction on State Highway No. 3 about 14 miles south of Seminole, Oklahoma, at a speed of

about 62 miles per hour, when Rodebush met a certain" Ford Pick-up truck "driven by the defendant Harwell and owned by the defendant Austin Drilling Company"; that "as the two vehicles approached each other the Ford pick-up pulled into the center of the highway and the Rodebush vehicle did likewise"; that "the two vehicles collided almost head-on near the center of the highway with the right front of the Rodebush vehicle striking the right front of the Austin Drilling Company vehicle at a point approximately one foot east of the center line of the highway and approximately 13 feet north of the north edge of a county road which intersected the highway at said point"; that "the highway at said point was of concrete construction, it was straight, dry, there was a center marker, it was in a 'no-passing' zone, on a grade, the point of impact was a short distance north of the crest of a hill."

At the conclusion of the trial the jury returned a verdict for plaintiff and judgment based thereon was subsequently rendered. Defendants appeal from order overruling their motion for new trial.

For reversal defendants advance two propositions. The first has four sub-divisions of which "(a)" is as follows: "The allegations of damages in the pleadings were insufficient to justify the evidence presented at the trial. To the introduction of this evidence the defendants duly objected and excepted". Defendants argue that "the allegations contained in the plaintiff's petition were insufficient to warrant the introduction of evidence to support damages for a permanent injury and impairment of earning capacity". We do not agree.

▆ In his petition plaintiff alleged "His ability to perform labor and follow the normal avocations of life has been greatly and permanently impaired". We consider such allegation tantamount to a specific allegation of "impairment of earning capacity". The primary reason a person labors and follows a vocation is to earn a livelihood. One whose ability to perform labor

and follow a normal vocation has been impaired surely has sustained a loss of earning capacity. Such is the logical and natural sequence in our society.

In the case of Missouri, O. & G. Ry. Co. v. Collins, 47 Okl. 761, 150 P. 142, 144, we said:

"* * * Where, as a consequence, of the injury charged, the injured person will necessarily, on account thereof, be less capable of transacting his usual business vocation in the future, proof of the impairment of his general earning capacity may ordinarily be given under the general allegation of the injury, and damages resulting therefrom, such as the inability to attend to his ordinary business, without special averment that plaintiff will not be able to earn as much in the future as in the past. Sutherland on Damages (3d Ed.) par. 1244."

▆ Defendants' next sub-proposition is that "The plaintiffs invited and cause to be committed prejudicial error by way of the deposition testimony of Denny Loyd Harwell". Such deposition was taken by an attorney for Rodebush while the latter was a defendant in the lower court. Defendants maintain that they "objected to certain questions and answers of the deposition being read to the jury" for the reason Rodebush's attorney "was attempting to impeach his own witness".

The record shows that during the reading of Harwell's deposition by counsel for plaintiff in the trial below, the following transpired:

"MR. BISHOP: Now, the Court please, Mr. Foliart did quite a bit of cross examination of his own witness in this deposition and I am going to object to the next question and answer. This witness was called by the attorney who is examining him and I object to this impeachment of his own witness.

"THE COURT: Overruled.

"MR. BISHOP: So that I won't have to interrupt again sir may I have

a running objection to Mr. Foliart's impeachment of his own witness and any additional questions where he tries to impeach him?

"THE COURT: Yes, the record may show.

"Q: The fact of the matter is you didn't even see this car until it was practically down on you, did you?

"A: Yes, I seen him."

The above is the only instance to which counsel for defendants specifically refers. We do not consider the asking of such question to be an attempt to impeach Harwell, nor did we in our study of the deposition as read in the trial below find that Rodebush's attorney attempted to impeach Harwell. The most that can be said is that such attorney was arguing with Harwell. No objection on that ground was lodged by counsel for defendants.

Defendants' third sub-proposition is that "The plaintiff invited and caused to be committed prejudicial error by way of the testimony of Dr. W. C. Moore". The testimony of which defendants complain is as follows:

"Q: Will you briefly tell us what history you obtained from him [plaintiff]?

"Q: Yes, sir. Mr. King told me that on the 22nd day of March, 1962, he was riding in an automobile as a passenger in the front seat and was asleep at the time when the automobile was struck by another one and it was determined that the automobile in which he was riding was traveling at a rate of about 60 miles an hour.

"MR. BISHOP: Just one moment. Now, Doctor I am sorry but that is a matter for the jury to decide.

"THE COURT: Yes, the rate of the automobile will be stricken.

"MR. BISHOP: Just limit your testimony to the medical facts, please, sir.

"A: Mr. King then was unconscious from the date of the accident, which was Wednesday, * * *"

Rodebush testified that when he noticed Harwell "make the turn I immediately put on my brakes and turned to the left and I have a habit of looking at the speedometer or I happened to see it then and it was 62 miles per hour".

The highway patrolman who investigated the collision testified that at the time Rodebush applied his brakes the speed of his automobile was "approximately 62 miles per hour". This patrolman went into detail as to the methods he used to determine such speed.

Roger Wright, a passenger in the Rodebush automobile, testified that when he first noticed defendants' vehicle the former was traveling "between sixty and sixty-five" miles per hour.

■ We do not consider the giving by Dr. Moore of such testimony as constituting prejudicial error. As above quoted, Rodebush and the highway patrolman testified that Rodebush was traveling between 60 and 65 miles per hour. Defendants do not show how they were prejudiced by such statement. We fail to see how they were prejudiced thereby, especially in view of the fact that such testimony was cumulative in that as above noted, three other witnesses testified similarly concerning the speed of the Rodebush car. Moreover, the trial court sustained defendants' objection to such testimony and ordered it "stricken". Further, he also instructed the jury to not consider, for any purpose, any evidence which had been stricken but to treat it "as though you never heard it". It does not appear that the jury disregarded the instruction or was influenced by such remark of the medical witness.

■ In defendants' last sub-proposition, complaint is also made concerning the rejection of evidence. After their last witness had testified, defendants offered in evidence the petition plaintiff had first filed in the action. In it the driver of the car in which

plaintiff was a passenger had been joined as a defendant. Action against that defendant had been dismissed. The first petition had been supplanted by an amended one. Parts of the first petition were contended by defendants to have contained admissions against plaintiff's interest in that they alleged that Rodebush, driver of the car in which plaintiff was riding, was driving at a speed of approximately 75 miles per hour at the time of the collision. The trial court sustained an objection to the introduction of the original petition. Defendants contend that under the holding of Scaggs v. Lindsey Well Service, Inc., Okl., 366 P.2d 945, the trial court erred. Also, that although plaintiff had not himself verified or signed the original petition, it was held in Oklahoma Natural Gas Co. v. Walker, Okl., 269 P.2d 327, "Admissions of counsel, made deliberately and intelligently, during trial, constitute high species of evidence, and parties may not be permitted at their pleasure to retract such admissions, in the absence of some showing of fraud, mistake, or lack of authority to make them."

In this connection, it is to be noted that defendant Harwell admitted that at the time of subject collision he was "probably six feet" across the center line of the highway down which he was driving. The investigating officer testified of effect that, at the time of impact, Harwell was still thirteen feet back north from the north edge of the east-west intersection road into which he was then angling. The trial court instructed the jury that if it found the collision was proximately caused by the negligence of Rodebush then its verdict should be for the defendants. By its verdict the jury found that the proximate cause of the collision was the negligence of defendant Harwell.

■ The holding in Okla. Nat. Gas Co. v. Walker, supra, allows for distinctions which we think here apply. The alleged admissions were made in the pleadings, rather than during trial. Moreover, it is apparent that the original petition was contradicted, at least by implication, by the superseding thereof by the amended peti-

tion. Further, the inference of authorization of counsel to make the assertion, or of the plaintiff's adoption of the same, is lessened by the supplanting of the petition by an amended petition, in the absence of attributing it to the litigant in some manner. Buehman v. Smelker, et al., 50 Ariz. 18, 68 P.2d 946.

During cross-examination of plaintiff, defendants did not undertake to impeach his testimony that he was asleep by challenging him with responsibility for the allegations in the original petition. See Larkins-Warr Trust v. Watchorn Pet. Co., 198 Okl. 12, 174 P.2d 589, 595(10).

Defendants presented the testimony of witnesses Mr. and Mrs. Blank of effect that the Rodebush car passed their car shortly before they reached the top of a rise; that at that time they were driving some 60 to 65 miles per hour; that Rodebush, at the time he passed their car, "was going about 60 or 70 miles an hour, something like that." Had the original petition been admitted in evidence the allegations therein as to speed in excess of lawful limit would have been but cumulative to defendants' evidence the jury had already heard.

It is to be noted at this juncture that the defendants waited until the conclusion of the reception of evidence to make the offer of plaintiff's original petition into evidence.

For all these reasons, we determine under the facts and circumstances of this case that the exclusion of the proffered evidence did not constitute reversible error.

Defendants' last proposition is "Error of the Court in the attempted rendition of an invalid judgment."

Defendants maintain that "It should be noted that judgment was not pronounced by the Court in this action until a formal motion had been made by the defendants on September 10, 1963." Defendants argue as quoted hereinafter in this and the next paragraph hereof that "Acting upon the motion of the defendants, the Superior Court entered its Journal Entry which may

be described as an Order 'Nunc Pro Tunc.' This writer describes the Journal Entry in this manner because of the phraseology wherein the court says, 'Complete judgment *made or intended to be made by the Court * * *.*' (Emphasis supplied). It can be seen from this language that the court was not sure on the 23rd day of September, 1963, whether or not it had ever pronounced judgment on behalf of the plaintiff. The Journal Entry reflects that if judgment was not rendered for the plaintiff *it was intended to be done.* (Emphasis supplied)

"Of course, a Nunc Pro Tunc Order cannot be rendered for that which was intended to be done."

▮ An examination of the record discloses that after the jury verdict was returned and read aloud "the court inquired of the jury if the verdict as read was the verdict of the jurors and thereupon each of said jurors answered in the affirmative, and the court directed and ordered that the verdict of the jury be received and filed and recorded by the clerk * * *" The verdict was duly filed by the clerk and is of record below. Under the terms of 12 O.S. 1961 § 696 "judgment must be entered by the clerk in conformity to the verdict, unless * * * the court order the case reserved for future argument or consideration." The validity of a judgment does not depend upon the formal signature of the trial judge to the journal entry. A judgment in fact rendered but not formally entered on the journal is valid and effective from the date of its pronouncement and a record memorial thereof may be supplied by an entry nunc pro tunc. Oklahoma Turnpike Authority v. Kitchen, Okl., 337 P.2d 1081, 1085.

▮ There is nothing in the record to show that rendition of judgment in this cause had been ordered reserved as provided by 12 O.S.1961 § 696. To the contrary, the acceptance of the verdict, the action of the trial court in directing that it be filed and recorded and the filing and recordation thereof by the clerk indicate

that rendition of the judgment stood effected below by operation of the cited statute. Peoples Electric Co-Operative v. Broughton, 191 Okl. 229, 127 P.2d 850, 853; Sanders v. Provine, 169 Okl. 203, 36 P.2d 855, 857. The trial court so determined in its judgment nunc pro tunc.

Affirmed.