**Nellie DE LOACHE et al., Appellants,**

**v.**

**J. T. NEWTON, Appellee.**

No. 6524.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 24, 1955.

Rehearing Denied Nov. 21, 1955.

Crenshaw, Dupree & Milam, Lubbock (Max Addison, Lubbock, of counsel), for appellants.

McCann & Boedeker, Levelland, for appellee.

MARTIN, Justice.

This appeal is solely on the issue of venue. Appellee, J. T. Newton, sued appellants, Nellie DeLoache and James I.

DeLoache, in the District Court of Hockley County, Texas alleging that appellants were liable to appellee by reason of having furnished him and his fellow workers with a defective tool and appliance as used by them in pulling pipe from a well, to-wit: "a defective pipe dog intended to be used to hold a string of two inch pipe in place which defective pipe dog had insufficient strength and grip to hold said string of pipe as it was intended to be held." Appellants filed a plea of privilege to be sued in Dallas County, Texas and appellee alleged that venue lay in Hockley County, Texas under Art. 1995, Exception 9 as amended by House Bill No. 88, Vernon's Ann.Civ.St. art. 1995, subd. 9. The amendment will not be quoted but the provision of the same as pertinent here places venue in the county where the act or omission of negligence occurred. The trial court sustained venue in Hockley County, Texas and appellants perfected an appeal assigning four points of error.

Appellants' first point asserts, "The trial court erred in overruling Appellants' pleas of privilege in this case, Appellee having totally failed to show any breach of duty owed by Appellants to Appellee." Under this point, appellants contend that their farm manager, John Bradford, placed appellee in charge of the work of repairing the well, both as to the tools used in the work as well as to the details of the repair. Appellants further allege there was no duty of inspection upon the appellants and that they were under no duty to discover latent defects. Appellants assert that it was appellee's duty to inspect for and discover defects in any equipment used. Under such point, it might be further appropriately added that appellants and their farm manager, John Bradford, were not the insurers of the safety of the instrumentalities furnished appellee and were liable only for their failure to exercise due, ordinary or reasonable care. A ruling on appellants' first point will resolve the appeal.

Appellee and his witnesses were the only parties who testified in the cause of action and the record is undisputed as to the facts elements under which venue must be laid.

The testimony of appellee reveals that he had worked on approximately 12 wells, using the pipe dog in question, without any injury to himself and without encountering any defect in the pipe dog. Appellee further testified there wasn't anything to indicate there was anything wrong with the bolt in the pipe dog as alleged to be defective and that as to the pipe dogs appellee, as an experienced well man, "felt like they were sufficient to do the job". Appellee testified that he had done windmill work practically all his life and was experienced in that type of work and that he knew how the pipe dogs worked and how they were made. His testimony reveals the following facts as to who was in control and management of the well work and as to who selected the tools and equipment used:

"Q. As an experienced well man, you felt like they (pipe dogs) were sufficient to do the job? A. Yes, sir.

"Q. And the question of how you fixed those wells and what tools you used was left up to you? A. Yes.

"Q. And Mr. Bradford didn't tell you what tools to take or what to use on fixing a well? A. No, sir.

"Q. And that was left up to you? A. That is right."

The testimony of appellee's witness, Willie Jones, reveals that he was directed to work on a well on the King farm owned by appellants. Apparently, King had borrowed the pipe dog in issue and had the same at the farm for use on his well work. Jones, following this job, apparently carried the pipe dog in issue back to the tool house where it was later carried out on the well job where appellee was injured. The tool in issue was apparently not borrowed by appellant's agent under this testimony or procured for use by appellee.

Appellants' first point of error must be sustained as the undisputed evidence reveals that appellant did not negligently furnish a defective pipe dog to the appellee for his use. Further, appellants

were only bound to use ordinary or reasonable care with reference to the furnishing of instrumentalities or in the inspection thereof. Since the undisputed testimony of appellee, an experienced well repair man, reveals he had used the pipe dog in issue for a number of times and believed the same to be without defect and suitable for the work, it is beyond controversy that even if appellants furnished the pipe dog they would not have been guilty of failure to use ordinary care in delivering the same to appellee. 56 C.J.S., Master and Servant, § 202, pp. 902–903–904–905.

The record further reveals without dispute that the pipe dog in issue was merely an instrument in the form of a "U" that fitted around the well pipe with a tongue attached to the instrument by a ⅜ths inch bolt. The tongue clamped on the pipe holding the same against the "U" to prevent the pipe from slipping. It was a simple tool in common use as to well work and appellee had been engaged in such work his entire lifetime. "The rule as to the duty of the master to furnish safe tools and appliances does not apply to simple tools in common use * * *". 56 C.J.S., Master and Servant, § 216, p. 925.

Appellee testified that an examination of the tool would not have revealed that the ⅜ths inch bolt was worn and thus any defect in the pipe dog was a latent defect. Appellee testified that he had used the pipe dog in working upon a number of wells and that he had not discovered any defect in the pipe dog. Such testimony clearly absolves the appellants from any failure to use reasonable care and diligence in discovering any latent defect in the pipe dog. As to latent defects the following rule governs the issue here:

"A master is not liable for injuries resulting to a servant by reason of latent defects of which he was ignorant and which could not be discovered in the exercise of reasonable care and diligence." 56 C.J.S., Master and Servant, § 247, p. 1002; Southwestern Telegraph & Telephone Co. v. Tucker, 102 Tex. 224, 114 S.W. 790; Texas & N.

O. R. Co. v. Sarver, Tex.Civ.App., 113 S.W.2d 317, writ refused.

Appellee testified that the entire choice of tools and equipment and duty of inspection of the same as well as conduct of the details of the work and repair on the well were entirely committed to him.

"A master is not required to inspect the common tools and appliances which are committed to the custody of a servant who has the capacity to understand their character and uses". Gulf, C. & S. F. R. Co. v. Larkin, 98 Tex. 225, 82 S.W. 1026, 1027, 1 L.R.A.,N.S., 944.

It was the appellee's duty to inspect and discover any defects in the tools. City of Teague v. Radford, Tex.Com.App., 63 S.W. 2d 376; Raney v. Houston Lighting & Power Co., Tex.Civ.App., 153 S.W. 178.

The judgment of the trial court is reversed and the cause is remanded with instructions that venue be changed to the county of the residence of appellants.